IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 15, 2002 Session

## JAMES CLARK BLANTON, III v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-A-80      Steve Dozier, Judge**

---

**No. M2001-02421-CCA-R3-PC - Filed July 30, 2003**

---

A Davidson County grand jury indicted the petitioner, James Clark Blanton, III, of two counts of especially aggravated robbery, two counts of especially aggravated kidnapping, and one count of coercion of a witness. The petitioner pled guilty to two counts of especially aggravated robbery with an agreement that he would serve two concurrent sentences of fifteen years each at 100%. The petitioner filed a post-conviction petition alleging that he received ineffective assistance of counsel. The post-conviction court held an evidentiary hearing to determine the merits of the petitioner's claim and subsequently denied the petition in a written order. The petitioner now appeals that denial. After reviewing the petitioner's claims and the evidence presented at the post-conviction hearing, we find that none of his allegations merit relief.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, James Clark Blanton, III.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General, Victor S. Johnson, District Attorney General; and Jon Seaborg, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The petitioner stipulated to the following facts, as advanced by the state, at his plea hearing. On August 10, 1997, the petitioner and his co-defendant, Jeremy Griffin, robbed Anthony Owens and Dennis Thompson, Jr. of a number of items including a watch, necklace, compact discs, a beeper, a wallet, and $6.00 in cash. The petitioner and Griffin accosted the two victims after they arrived at the home of Cary Gaston in response to a page. After robbing the two victims, Griffin and

the petitioner continued to beat the victims, hitting them with a shotgun barrel and a BB gun. As a result, one victim required twenty-seven stitches to his ear, which had been nearly removed, and eight stitches to his forehead. The second victim required ten stitches to repair damage done to his mouth.

The petitioner's counsel, who represented him in both juvenile and adult court, was an individual who had represented the petitioner in several juvenile charges prior to his representation concerning the charges stemming from the instant crimes. At his post-conviction hearing, the petitioner testified that he waived his transfer hearing and voluntarily agreed to be tried as an adult based on advice from his counsel. The petitioner also testified that he met with his counsel infrequently before his trial, perhaps on two occasions, one of which was necessary to discuss his plea offer. During this plea discussion, the defendant testified that his counsel failed to advise him that the kidnapping charges were invalid per State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). Counsel did advise him, however, of his potential sentence if he were to be convicted of all of his indicted charges and of the strong possibility that the trial court would order him to serve his sentences consecutively due to his extensive criminal record. Because the petitioner was unaware that the kidnapping charges were insupportable and based on the advice of his counsel, the petitioner took the plea agreement offered to him. This plea bargain contained an agreement to dismiss the kidnapping charges and the coercion of a witness charge. The petitioner also testified that his counsel failed to challenge the admissibility of the evidence seized at the crime scene and, despite his request that counsel do so, to interview several witnesses who could have provided exculpatory information.

The petitioner's mother also testified at the post-conviction hearing. She claimed that the petitioner's counsel did not advise her of the date and time of the petitioner's transfer hearing despite her request that he do so. She agreed that counsel advised her that the petitioner would probably be transferred to adult court due to his extensive juvenile record, but she claimed that she and the petitioner's father had told counsel that they did not wish to waive the hearing, but instead wanted to challenge the transfer.

Additionally, the petitioner introduced the testimony of one of the two witnesses that he claims his counsel did not interview in spite of the petitioner's request. Kerry Gaskin testified that although she and her sister were present at the crime scene, the petitioner's counsel never attempted to contact her or her sister in order to question them about the events that she witnessed. She testified that a police officer interviewed both her and her sister on the morning after the robberies and that she had not discussed the incidents of that evening since the police interview.

Jeremy Griffin, the petitioner's co-defendant, also testified at the post-conviction hearing. He testified that he was primarily responsible for the commission of the crimes at issue and that he implicated the petitioner as the primary culprit because he believed that the petitioner would receive a slight punishment for those offenses because he was sixteen-years-old at the time and therefore still within the jurisdiction of the juvenile justice system. Griffin was nineteen-years-old at the time the

-2-

offenses were committed and therefore was within the jurisdiction of the adult criminal justice system. Griffin testified that he received a fifteen-year sentence for his involvement in the instant offense, which he is serving at a 30% release eligibility date. Once he learned that the petitioner had been sentenced as an adult and received a harsher sentence than he had received, he decided to execute an affidavit of his own accord in which he explains the true extent of the petitioner's involvement in the crimes at issue. Griffin claims that the petitioner hit both victims, but that he, not the petitioner, took their belongings and that after the robberies he gave the petitioner a watch that he had stolen from one of the victims.

The petitioner's counsel also testified at the post-conviction hearing, and his testimony differed greatly from the petitioner's testimony. Counsel claimed that he talked extensively with the petitioner about his case before it was transferred to adult court. However, once in adult court, he did not continue his frequent talks with the petitioner about his case largely because they had already covered the specifics of the case in detail. Counsel testified that he advised the petitioner to waive his transfer hearing because the petitioner and the petitioner's father were both interested in having the petitioner's bond set as soon as possible, and counsel believed that this course of action was the most expedient route to getting his bond set. Furthermore, counsel also believed that the petitioner's transfer to adult court was imminent because of the petitioner's extensive juvenile record. Counsel was personally familiar with this extensive record due to his past representation of the petitioner. Counsel advised the petitioner to accept the proposed plea bargain because he believed that the defendant's extensive juvenile record could contribute to a harsher sentence determination and because the petitioner's probation officer told counsel that she intended to testify against the petitioner. Counsel believed that the probation officer's testimony would be very detrimental to the petitioner. Counsel recalled that he had spoken with one of the two sisters that the petitioner asked him to interview. He also stated that he did not file a motion to suppress the incriminating evidence seized at the crime scene because the petitioner never requested that he do so.

After conducting the hearing, the post-conviction court issued an order denying the petitioner's petition. In its order, the court found that the petitioner knowingly and voluntarily waived his transfer hearing based on proper information provided by counsel. The post-conviction court further accredited the testimony of counsel and found that counsel met with the petitioner an adequate number of times in order to sufficiently prepare his case. The court also accredited counsel's testimony in which counsel claimed that he spoke with one of the two sisters who the petitioner wished him to interview at the petitioner's transfer hearing. Counsel claimed that after this discussion, he determined that the witnesses' testimony would be unfavorable to the petitioner. In response to the petitioner's claim that his guilty plea was involuntarily made on the poor advice of counsel, the court found that the petitioner had failed to prove that but for this allegedly deficient advice, he would have opted to plead not guilty. Next, the court determined that counsel was not deficient by failing to pursue suppression of the items seized at the crime scene because the petitioner would have lacked standing to bring such a challenge. Finally, the court found incredible the petitioner's claim that his counsel had advised him that he would be minimally required to serve 75% of his sentence pursuant to the plea agreement, as opposed to the true terms of the agreement, which required the petitioner to serve 100% of his sentence. The court accredited counsel's

testimony in which counsel claimed that he accurately advised the petitioner of the terms of the proposed plea agreement and that the transcript of the petitioner's plea hearing reflects that the petitioner was advised and acknowledged that he understood the terms of his agreement before pleading guilty.

In his appeal before this Court, the petitioner complains that the post-conviction court's findings were erroneous and that he is entitled to relief based on several of the grounds enumerated in his original petition. Furthermore, the petitioner also avers that he is entitled to a new trial based on newly discovered evidence, e.g. Jeremy Griffin's confession to the instant crimes. Based on our review of the record, we conclude that none of the petitioner's allegations merit relief.

## Post-Conviction Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim .App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Effectiveness of Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law

and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness.  Burns, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight.  See Adkins, 911 S.W.2d at 347.  This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings.  See id.  However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case.  See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992)

## A. Transfer Hearing

### (1) Parental Notice of Transfer Hearing

The petitioner also complains that counsel provided ineffective assistance by failing to advise the petitioner's parents of the date and time of his transfer hearing despite their request that he do so or provide the petitioner's parents with written notice of the date and time of the petitioner's scheduled transfer hearing although such notice is required per Tennessee Code Annotated section 37-1-134(a)(3).

Although the petitioner alleges that counsel provided ineffective assistance by failing to notify his parents of the date and time of his transfer hearing despite their express request that he do so, counsel was not under any obligation, to our knowledge, to notify the petitioner's parents of the date and time of his scheduled transfer hearing.  Furthermore, it is not clear from the record that any such date and time was ever set, as counsel testified that the petitioner waived his transfer hearing out of open court.  See State v. Hale, 833 S.W.2d 65, 67 (Tenn. 1992) (holding that the entire transfer hearing required per section 37-2-134 is waivable).  Furthermore, if a date and time were set and therefore notice was required per section 37-2-134(a)(3), the statutory language requiring this notice seems to indicate that it is the transferring court, rather then the juvenile's counsel, who is required to effectuate the notice.  See Tenn. Code Ann. § 37-2-134(a)(3).  Accordingly, we find that the petitioner has failed to prove that counsel was deficient in his representation by failing to notify his parents of a transfer hearing, if indeed one was ever set.

Moreover, even if the petitioner had successfully proven that his counsel was deficient in this aspect of his representation, the petitioner has not demonstrated how he was prejudiced by counsel's omission.  The petitioner's mother testified that if she had been notified of the date and time of the transfer hearing, she would have been present at the hearing.  However, the petitioner has not demonstrated how her presence would have resulted in him remaining within the juvenile justice system.  Through counsel's testimony and the petitioner's own admission, we conclude that the petitioner had an extensive juvenile criminal record.  Based on (a) the petitioner's juvenile record, (b) the fact that the petitioner was sixteen-years-old and charged with having committed four felonies, making him eligible for a transfer per section 37-2-134, and (c) the fact that the petitioner's

probation officer expressed her intent to testify for the state at a transfer hearing evidences the reasonableness of counsel's advice that the trial court would have, in all probability, ordered the petitioner's transfer to the adult criminal justice system even if the petitioner had contested the transfer. For these reasons, we find that this allegation of ineffective assistance of counsel lacks merit.

### (2) Voluntariness of Waiver

The petitioner also argues that his counsel provided ineffective assistance by persuading him to waive his transfer hearing and not contest a transfer to the adult criminal justice system based on misinformation and poor advice. Specifically, he alleges that counsel failed to adequately advise the petitioner of his potential sentence in the adult courts, assured him that counsel could "pull strings" with a female prosecutor to secure a less severe sentence, and assured him that he would be granted a relatively inexpensive bond by the adult court. However, counsel testified that he adequately advised the petitioner of his potential sentences if convicted in adult court and that he neither assured the petitioner that he would "pull strings" with a female district attorney to secure a more lenient sentence for him nor advised the petitioner that he would receive a $2,000 bond. In addition to this testimony, counsel further testified that the petitioner made a knowing and voluntary decision to waive his transfer hearing after discussions with counsel. According to counsel, the petitioner, of his own accord, decided to waive his transfer hearing and voluntarily submit to the adult court's jurisdiction. The petitioner based his decision on his desire to have a bond set, counsel's advice that a transfer to the adult justice system was extremely likely based on the petitioner's extensive juvenile record, and counsel's advice that a voluntary transfer might increase his chances of a favorable plea offer. Based on counsel's testimony, the post-conviction court found that the petitioner voluntarily and knowingly waived his transfer hearing. We find that this evidence more than adequately supports the post-conviction court's finding that the petitioner knowingly and voluntarily waived his transfer hearing.

### B. Failure to Adequately Meet with Petitioner

The petitioner claims that his counsel provided him with ineffective assistance by failing to adequately meet with him prior to his trial. Specifically, the petitioner alleges that trial counsel met with him two to three times in preparation for this case. Conversely, counsel recalled that he met with the petitioner fifteen to twenty times. Counsel testified that the majority of these meetings took place while the petitioner was still within the jurisdiction of the juvenile justice system. According to counsel, he discussed the petitioner's case extensively with the petitioner while he was within the juvenile system and therefore only discussed the petitioner's case with him four to five times once the petitioner was transferred to the adult system. Counsel agreed but failed to furnish his time sheets to the post-conviction court to verify the number of his meetings with the petitioner. The petitioner solicited an individual to review log-in sheets from the adult criminal system, which evidenced that counsel once visited an unspecified inmate during the relevant time period.

-6-

The post-conviction court found that the absent time sheets promised by counsel would have been helpful when determining the merits of the petitioner's claims. Nevertheless, the court accredited counsel's testimony and found that counsel had met with the petitioner an adequate number of times to prepare for this case. We find that the evidence does not preponderate against the post-conviction court's finding. According to counsel, he met with the petitioner fifteen to twenty times, which would have allowed him to discuss the case with the petitioner in detail. Furthermore, when testifying at the post-conviction hearing, counsel appeared to be well-versed in the specifics of the petitioner's case, indicating that he underwent a significant amount of preparation for this case. Thus, we find that this issue lacks merit.

### C. Failure to Interview Potential Witnesses

The petitioner alleges that his counsel provided ineffective assistance because he failed to interview two potential defense witnesses, Kerry Gaskin and Angie Gaskin. At the post-conviction evidentiary hearing, the petitioner offered the testimony of Kerry Gaskin, who testified that neither she nor her sister, Angie, were interviewed by anyone except police officers about their knowledge of the instant crimes. Furthermore, Ms. Gaskin testified that she did not witness much of the events surrounding the instant crimes and could not recall any of the details of what she did witness. The petitioner did not offer the testimony of Angie Gaskin at the hearing.

Counsel testified that while he did not recall interviewing Angie Gaskin, he did interview Kerry Gaskin, and after speaking with her, he determined that her testimony would not be beneficial to the petitioner's case. The post-conviction court accredited counsel's testimony and found this allegation of ineffective assistance to lack merit.

We first note that when a petitioner alleges that his counsel was ineffective by failing to interview certain potential witnesses, the petitioner has a duty to offer those witnesses' testimony at an evidentiary hearing in order to allow the post-conviction court to evaluate the exculpatory nature of their testimony. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App.1990). Here, the petitioner failed to call Angie Gaskin as a witness at his post-conviction hearing and therefore has waived his complaint with regard to her testimony.

Turning next to Kerry Gaskin's testimony, we note that the evidence does not preponderate against the post-conviction's decision to accredit counsel's testimony that he had indeed interviewed Kerry Gaskin. Furthermore, even if we were to accredit Kerry Gaskin's testimony and assume that counsel did not interview her, we cannot say that the petitioner was prejudiced by this omission because Ms. Gaskin's recollection of the events surrounding the instant crimes was not exculpatory of the petitioner.

Finally, we note that when the petitioner pled guilty to the instant charges, the trial court in accepting his guilty plea specifically asked him if he had any complaints regarding the effectiveness of his counsel. The court specifically asked the petitioner if there were witnesses who had not been interviewed although he had requested his counsel to interview them. The petitioner responded,

under oath, that there were no such witnesses. Based on the petitioner's response and the other reasons outlined above, we find that this issue lacks merit.

## **Voluntariness of Petitioner's Guilty Plea**

The petitioner claims that he pled guilty to the instant offense based on erroneous and incomplete information provided to him by his counsel. He alleges that but for this erroneous and incomplete advice, he would not have agreed to accept the plea bargain proposed by the state. When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); see also Chamberlain v. State, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Specifically, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56,106 S. Ct. 366, 369 (1985) (citing Alford, 400 U.S. at 31, 91 S. Ct. at 164). As stated supra, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Under Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S. Ct. at 370; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

In the instant case, the petitioner alleges that his counsel misinformed him about his potential sentencing ranges for each of his indicted offenses; that counsel failed to discuss with him the possibility that his kidnapping charges were not prosecutable per State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), and its progeny; and that counsel misinformed him about the terms of his plea agreement, telling him that his plea agreement stipulated that he would be eligible for release after serving 75% of his sentence, as opposed to the actual terms of his plea agreement, which required him to serve 100% of his sentence. The post-conviction court found that while counsel may have been deficient by failing to fully advise the petitioner of the "ramifications and/or possible effects

of <u>State v. Anthony</u>," the petitioner failed to show how he was prejudiced by this omission. With respect to the petitioner's other complaints, the post-conviction court found that the petitioner had failed to carry his burden of proving that but for counsel's deficient performance, he would not have pled guilty and insisted on going to trial.

We find that the petitioner has not demonstrated that the evidence preponderates against the trial court's findings. Counsel testified that he accurately informed the petitioner of the sentencing ranges that he would face for each offense if convicted of his indicted charges and that he informed the petitioner that the plea bargain proposed by the state included a stipulation that the petitioner serve his two sentences concurrently with a 100% release eligibility date. Furthermore, counsel testified that he fully informed the petitioner of the factual and legal issues surrounding his two kidnapping charges and that the petitioner was excited about the concept that they may not be supportable in court. However, based upon his extensive criminal record in the juvenile system and the fact that his probation officer was adamant about testifying in any dispositional hearing including the petitioner's sentencing hearing if he was convicted of his indicted offenses, the petitioner made the decision to accept the state's plea bargain. Counsel testified that while he may have advised the petitioner about what he felt was in the petitioner's best interest, he stressed to the petitioner that the decision of whether to accept or deny the plea offer was solely his own. The post-conviction court accredited counsel's testimony, and we will not second-guess such credibility determinations during appellate review.

Furthermore, at the petitioner's hearing wherein he entered his guilty plea, the petitioner affirmed that he understood the terms of his sentence and that the terms where as they had been represented to him. Furthermore, he affirmed that his counsel had represented him effectively and that he had no complaints about his representation. Accordingly, we find that the evidence in the record supports the post-conviction court's conclusion that the petitioner has not proven that his counsel deficiently represented him and that but for this deficient representation, he would not have agreed to plead guilty under the terms of the state's plea offer.

**Newly Discovered Evidence**

During the second day of the petitioner's post-conviction evidentiary hearing, the petitioner orally moved to amend his post-conviction petition to include a new ground for relief, that newly discovered evidence entitled him to a new trial. The post-conviction court agreed, and the petitioner introduced the testimony of his co-defendant, Jeremy Griffin, who testified that he had been primarily responsible for the events underlying both of their convictions, but had implicated the petitioner as being primarily responsible because the petitioner was sixteen-years-old at the time, whereas he was nineteen-years-old. Therefore, Griffin concluded that the petitioner would be sentenced as a juvenile and receive a more lenient sentence that he would have received for the same crimes in the adult criminal justice system. Griffin subsequently executed an affidavit in which he

reported the true version of the events in question, and the petitioner introduced this affidavit as evidence at his hearing.

Although the trial court agreed to allow the petitioner to amend his post-conviction petition to include this claim, we note that newly discovered evidence is not generally an appropriate ground for relief under the Post-Conviction Procedure Act. See William H. Necessary, Jr., v. State, No. 03C01-9601-CC-00009, 1999 WL 138627, at *7 (Tenn. Crim. App. at Knoxville, Mar. 16, 1999); Randy Hicks v. State, No. 03C01- 9608-CR-00296, 1998 WL 88422, at *3 (Tenn. Crim. App. at Knoxville, Mar. 3, 1998). Specifically, the Post-Conviction Procedure Act states that a petitioner may seek relief under the act for an abridgement of a constitutional right that renders the petitioner's conviction void or voidable, see Tenn. Code Ann. § 40-30-203, while this request for relief involves an allegation of newly discovered evidence, which does not implicate a constitutional deprivation. A request for a new trial based on newly discovered evidence is properly raised in a petitioner for writ of error coram nobis, which may be filed per Tennessee Code Annotated section 40-26-105. See Tenn. Code Ann. § 40-26-105. Furthermore, although in the instant case the post-conviction court allowed the petitioner to orally amend his petition to include this issue, the court failed to address the issue of newly discovered evidence in its order denying the petition, perhaps as a result of the lack of a formal writing memorializing this request for relief.

However, despite the improper forum in which this issue has been presented to this Court and despite the post-conviction's court failure to address the merits of this issue in its order denying the post-conviction petition, we find that this claim lacks merit. In Newsome v. State, 995 S.W.2d 129, 134 (Tenn. Crim. App. 1998), this Court held that a subsequent third-party confession does not affect the voluntariness of a guilty plea, and, accordingly, a petition for writ of error coram nobis based on such a claim will not entitle the petitioner to a new trial. When denying the claim of newly discovered evidence as a valid basis for relief, we reasoned that a subsequent third-party confession "is not so much 'newly discovered evidence' as it is 'newly disclosed' to the court." Id. When a defendant enters a guilty plea, he is fully aware of whether he did or did not commit the crime or crimes in question. See id.

> [I]f the plea agreement was negotiated in good faith, there are no allegations of fraud or misfeasance, and, in all other regards, the plea agreement was entered into voluntarily and knowingly, [the petitioner] cannot now complain of that which he had willingly bargained for previously. A petition for the writ of error coram nobis is not intended to relieve a party of its own negligence, ignorance, or change of mind.

Id. Based on this precedent, we find that the petitioner has failed to demonstrate that Jeremy Griffin's confession and assumption of guilt for his crimes entitles him to a new trial. Thus, this issue lacks merit.

## Conclusion

For the foregoing reasons, we find that none of the petitioner's allegations merit relief. Accordingly, the judgment of the post-conviction court is AFFIRMED.

 

_____
JERRY L. SMITH, JUDGE