IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 2, 2003

## CHAUNCEY R. GORDON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Giles County**
**No. 10337     Robert L. Holloway, Jr., Judge**

-------------------

**No. M2002-02619-CCA-R3-CD - Filed December 31, 2003**

-------------------

The petitioner, who pled guilty to one count of first degree murder and one count of second degree murder, appeals the denial of his petition for writ of error coram nobis, arguing that the trial court should have granted him relief based on newly discovered evidence which allegedly showed that his trial counsel had a conflict of interest at the time he entered his pleas of guilty. Following our review, we affirm the order of the trial court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Chauncey R. Gordon, Wartburg, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Patrick S. Butler, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

In October 1989, the petitioner, Chauncey R. Gordon, shot and killed his girlfriend and her mother in Giles County. See Chauncey R. Gordon v. State, No. 01C01-9710-CC-00483, 1998 WL 881864, at *1 (Tenn. Crim. App. Dec. 18, 1998), perm. to appeal denied (Tenn. May 10, 1999). As a result, the Giles County Grand Jury indicted the petitioner on two counts of first degree murder. Id. After extensive negotiations between the petitioner's trial counsel and the district attorney, the petitioner pled guilty on January 2, 1991, to one count of first degree murder and one count of second degree murder in exchange for an agreed sentence of life plus twenty-five years. Id. The petitioner thereafter filed a petition for post-conviction relief, alleging that his guilty pleas were not voluntarily, knowingly, and understandingly made. Id. Following an evidentiary hearing, the post-

conviction court denied the petition, finding that the petitioner's guilty pleas were knowingly and voluntarily entered. Id. at *3. This court affirmed the post-conviction court's denial of the petition on December 18, 1998, and our supreme court denied the petitioner's application for permission to appeal on May 10, 1999. Id. at *1.

On January 22, 2002, the petitioner filed a *pro se* petition for writ of error coram nobis, alleging that he had recently discovered a letter sent from his trial counsel to the district attorney general prior to the entry of his guilty pleas, which revealed that trial counsel knew the victims' family and therefore had a conflict of interest. The petitioner asserted that, had he known about trial counsel's relationship with the victims and their family, he would not have pled guilty. The text of trial counsel's undated, handwritten letter to the district attorney general, which the petitioner attached to his petition, is as follows:

> Attached please find a copy of the Order requiring the appropriate member of the Coleman party to execute medical releases. Many times doctors only take originals. Therefore there are several.

> The first set is accepted by local doctors. Please have the appropriate member of the Coleman family sign each by the check mark as executor or executrix & have someone else witness the signature and date same.

> The second set needs to be signed by the appropriate party also in their capacity as executor/executrix of Jacqueline's estate. These two need to be signed as such by each check mark & dated at the bottom. The signature should be witnessed by a notary (if one is not available, please call my office & we will provide one).

> Please let me know when I might pick these up as soon as possible.

> Also, since the "finality" of this case has seemed to be a concern with certain family members I have spoken too [sic] I would like the opportunity to explain to the Coleman's the 3 tiered appellate process should the death penalty result in either case. (i.e. direct appeal, post conviction relief in state court, & federal habeas corpus/post conviction appeals all of which combined could take as long as ten (10) years).

> For purposes of settlement &/or trial, the defendant will also be able to announce at the time of entering the plea the factual

circumstances surrounding this tragedy (which has also been a question which the Coleman family has wanted answered).

I have known most of the Coleman's for years & would appreciate the opportunity to talk with them today if possible. Please let me know how I might help if necessary.

The State answered the petition by asserting, *inter alia*, that the writ was barred by the one-year statute of limitations, the letter did not constitute substantive evidence that would have had any bearing on the State's evidence against the petitioner, trial counsel did not have a conflict of interest, and "knowledge of this letter would have in no way affected the rendition of the judgment had the Court known of it."

The trial court appointed counsel and held a hearing on the petition on September 23, 2002. The petitioner testified he had first seen the letter approximately three months previously, after the district attorney's office had responded to his request for a copy of his file. An inmate legal clerk at the prison, who was assisting him with his case, had directed his attention to the letter. The petitioner said he had not known that trial counsel was acquainted with the victims' family, and that trial counsel had never informed him of his relationship with them. On cross-examination, the petitioner acknowledged that, as a result of his guilty pleas, the State did not seek the death penalty for the two murders. He further acknowledged that trial counsel's expressed motivation for talking with the victims' family was to attempt to get them to consent to the plea bargain, and conceded that trial counsel was trying to save his life.

Trial counsel testified that his ultimate purpose in writing the letter was to convince the State not to seek the death penalty and to agree to a plea bargain. He explained:

I wrote the letter because the first priority I had as [the petitioner's] lawyer was to do whatever I could to try to convince the State that this was not a case where I felt like they needed to be seeking the death penalty.

And by obtaining medical information about the victims and meeting with the victims' families - - or family- - to make sure they understood the judicial process, and the time involved, and things along those lines.

I felt that their knowledge of those issues, in conjunction with the facts, that I would be getting into some medical history with regard to their family, might cause the D.A.'s office to reevaluate the penalty they saw [sic], and/or offer a plea agreement that [the petitioner] might considering [sic] taking.

Trial counsel agreed he had been successful in his efforts to get the State to agree to a plea bargain whereby the defendant could escape facing the death penalty.

Trial counsel testified he knew both victims by sight, having seen them around town, but did not know them personally. He said there was a "brother or somebody in the family," "a good athlete at Giles County High School," with whom he at one point in time had "a little bit of rapport," but he never had any close personal friendships or ties with anyone in the victims' family which would have prevented him from zealously representing the petitioner. Although trial counsel could not recall, he said it was possible he had sent the letter to the district attorney without informing the petitioner. However, he said he felt that the letter needed to be sent because the petitioner was charged with capital crimes and the State was seeking the death penalty.

At the conclusion of the hearing, the trial court concluded that the letter offered by the petitioner failed to show that there had been a conflict of interest on the part of trial counsel. Specifically, the trial court found the following:

> Now, all the letter says to me is let me try to talk the victims' family into allowing the State to offer something other than the death penalty. This is a small town; a fairly rural area. You know a lot of people. [Trial counsel] has explained how he knew of them.
>
> None of it sounds like a close relationship. Just a passing relationship. One of the brothers, who was an athlete, perhaps he knew well enough to have a conversation with.
>
> . . . .
>
> But it's clear to this Court, having been involved in death penalty cases as a defense counsel and as a judge, what's going on here. It may not be to [the petitioner] or to the [inmate legal clerk] who read the letter, but it's clear to the Court that [trial counsel] is simply trying to work out a plea agreement with the State of Tennessee for something where [the petitioner's] life will not be put at jeopardy.

Consequently, on September 23, 2002, the trial court entered a written order denying the petition for writ of error coram nobis. Because the trial court ruled on the merits of the petition, it did not consider whether the writ was barred by the one-year statute of limitations.

## ANALYSIS

The petitioner contends due process bars the application of the one-year statute of limitations, and that the trial court erred in denying his writ of error coram nobis on the basis of his newly

discovered evidence. Specifically, the petitioner asserts that the letter from his trial counsel, which stated that counsel had known most of the Colemans for years and had already talked to some of them, contradicts counsel's claim that he did not have a personal relationship with the victims' family. The petitioner argues that counsel's relationship with the victims' family calls into question whether counsel provided adequate representation of the petitioner and renders his guilty pleas unknowing and involuntary. The State argues that the petition should have been dismissed by the trial court because it was filed outside the statute of limitations. Notwithstanding the court's failure to dismiss on the basis of the statue of limitations, the State argues that the trial court properly determined that the petitioner was not entitled to error coram nobis relief on his claim.

A writ of error coram nobis is an extraordinary remedy by which the trial court may provide relief from a judgment under narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). The writ "will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105 (2003). In the case of a conviction stemming from a guilty plea, "in order for a writ to issue, the [petitioner] would have to present newly discovered evidence which would show that his plea was not voluntarily or knowingly entered." Newsome v. State, 995 S.W.2d 129, 134 (Tenn. Crim. App. 1998). The decision to grant or deny a petition for writ for error coram nobis on the grounds of newly discovered evidence lies within the sound discretion of the trial court. Id. This court will not disturb the decision of the trial court on a petition for writ of error coram nobis absent a showing of an abuse of discretion.

As an initial matter, we agree with the State that the petition for writ of error coram nobis was barred by the statue of limitations. The statute of limitations for seeking a writ of error coram nobis is one year from the date the judgment becomes final in the trial court. See Tenn. Code Ann. §§ 40-26-105, 27-7-103; Mixon, 983 S.W.2d at 671. The petitioner concedes his petition was filed well outside the one-year statute of limitations, but he nonetheless argues that due process considerations, as set forth in Workman v. State, 41 S.W.3d 100 (Tenn. 2001), and Sample v. State, 82 S.W.3d 267 (Tenn. 2002), require that the statute of limitations be tolled. We respectfully disagree.

In Workman, our supreme court held that due process required the tolling of the one-year statute of limitations where a petitioner in a capital case sought a writ of error coram nobis based on newly discovered exculpatory evidence, concluding that the petitioner's "interest in obtaining a hearing to present newly discovered evidence that may establish actual innocence of a capital offense far outweighs any governmental interest in preventing the litigation of stale claims." 41 S.W.3d at 103. Similarly, the court held in Sample that due process required that the statute of limitations for bringing a post-conviction petition be tolled where the petitioner had recently discovered proof that the State withheld exculpatory evidence at his trial. 82 S.W.3d at 275-76. As the State notes in its brief, unlike the situations presented in Sample and Workman, the newly discovered evidence in the case at bar has no bearing on the petitioner's innocence of the offenses. We conclude, therefore, that due process does not require the tolling of the statute of limitations and thus, that the petition for

error coram nobis relief is time-barred. See, e.g., <u>Gregory A. Hedges v. State</u>, No. E2002-02610-CCA-R3-PC, 2003 WL 22426831, at *2 (Tenn. Crim. App. Oct. 24, 2003) (concluding that statute of limitations for writ of error coram nobis was not tolled in case where, in contrast to <u>Workman</u> and <u>State v. Ratliff</u>, 71 S.W.3d 291 (Tenn. Crim. App. 2001), the petitioner never denied his participation in offenses for which he was convicted).

Although we conclude that the trial court should have denied the petition based on the statute of limitations, we find no abuse of discretion on the part of the trial court in its denial of the petition on its merits. In concluding that the letter did not show a conflict of interest on the part of trial counsel, the trial court noted that Pulaski is a "fairly rural area" where residents are often familiar with each other. The trial court found that trial counsel had only a "passing relationship" with the victims and their family, and counsel's letter merely represented his attempt to get the family members to consent to a plea bargain, which would potentially save the life of the petitioner. It is within the trial court's province to determine the credibility of the witnesses who testify at the error coram nobis hearing. See <u>Newsome</u>, 995 S.W.2d at 134-35. The trial court obviously found trial counsel's explanation of the letter and his description of his relationship with the victims' family credible. The trial court therefore concluded there were no grounds for granting error coram nobis relief. Finding no abuse of discretion on the part of the trial court, we affirm the order of the trial court denying the petition for writ of error coram nobis.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-6-