IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2004

## JERRY BRITT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamblen County**
**Nos. 97CR213, 96CR207, 96CR172     James E. Beckner, Judge**

<hr>

**No. E2004-01276-CCA-R3-PC - Filed December 20, 2004**

<hr>

The petitioner, Jerry Britt, entered <u>Alford</u> pleas in 1996 to three counts of attempted rape of a child and guilty pleas to one count of possession with intent to sell or deliver a Schedule II controlled substance, one count of possession with intent to sell or deliver a Schedule IV controlled substance, and six counts of delivery of a Schedule II controlled substance, and received an effective sentence as a Range I, standard offender of forty-eight years in the Department of Correction. He appeals the dismissal of his petition for writ of error coram nobis, arguing that the trial court should have granted him relief based on newly discovered evidence, the victim's recantation testimony. Following our review, we affirm the order of the trial court dismissing the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and J. C. MCLIN, JJ., joined.

P. Richard Talley, Dandridge, Tennessee, for the appellant, Jerry Britt.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; and C. Berkeley Bell, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**PROCEDURAL HISTORY**

This is the petitioner's third time before this court, and his extensive procedural history has been succinctly set out in two previous decisions. See <u>Jerry Britt v. State</u>, No. E2001-00864-CCA-R3-PC, 2002 WL 31126638 (Tenn. Crim. App. Sept. 26, 2002), <u>perm. to appeal denied</u> (Tenn. Jan. 27, 2003); <u>Jerry E. Britt v. State</u>, No. 03C01-9806-CR-00208, 1999 WL 359000 (Tenn. Crim. App. June 4, 1999).

On August 26, 1997, the petitioner timely filed a *pro se* petition for post-conviction relief, contending, as this court earlier described, "primarily that he was denied effective assistance of counsel at his guilty plea hearing because he was not advised specifically of the consequences of his guilty plea." Jerry E. Britt, 1999 WL 359000, at *1. The post-conviction court dismissed this petition on March 30, 1998, without a hearing. On appeal, this court remanded the case for the petitioner to "have new counsel appointed and . . . be given an evidentiary hearing so that he will have the opportunity to try to prove his allegation that his original trial counsel did not properly investigate his case, as well as any other allegation that new counsel may determine is appropriate." Id. at *2.

Subsequent to the remand, the petitioner filed an amended post-conviction petition, asserting that "he received ineffective assistance of counsel when he entered his pleas; that his counsel's deficient performance rendered his guilty pleas unknowing and involuntary; and that he should be granted post-conviction relief because of newly discovered evidence." Jerry Britt, 2002 WL 31126638, at *1. On March 16, 2001, the post-conviction court conducted an evidentiary hearing, at which the victim testified, recanting her accusation of sexual abuse made before the petitioner's pleas of guilt. After the hearing, the post-conviction court again dismissed the petition and this court affirmed the decision, concluding that the petitioner "received effective assistance of counsel and that he entered his plea knowingly, voluntarily, and intelligently." Id. at *13. We further concluded that "the [p]etitioner [was] not entitled to post-conviction relief on the basis of newly discovery evidence," id. at *14, disagreeing with the petitioner's claim that the victim's recantation was newly discovered evidence:

> [A]s the State correctly points out, newly discovered evidence is not generally an appropriate ground for relief under the Post-Conviction Procedure Act. See William H. Necessary, Jr., v. State, No. 03C01-9601-CC-00009, 1999 Tenn. Crim. App. LEXIS 246, at **17-18 (Tenn. Crim. App., Knoxville, Mar. 16, 1999); Randy Hicks v. State, No. 03C01-9608-CR-00296, 1998 Tenn. Crim. App. LEXIS 253 at **8-9 (Tenn. Crim. App., Knoxville, Mar. 3, 1998). More specifically, this Court has held that "recanted testimony amounts to no more than a request to relitigate the sufficiency of the evidence at trial and is not a proper subject of post-conviction relief." Teresa Deion Smith Harris v. State, No. W2000-02611-CCA-R3-PC, 2001 Tenn. Crim. App. LEXIS 604, at *3 (Tenn. Crim. App., Jackson, June 13, 2001).

Id.

Following this court's affirmance of the dismissal of the amended petition for post-conviction relief, the petitioner filed a petition for writ of error coram nobis on January 21, 2003, arguing that the victim's recantation testimony at the evidentiary hearing constituted newly discovered evidence, requiring the trial court to set aside his guilty pleas. An exhibit to the petition was the entire transcript from the March 16, 2001, evidentiary hearing. On April 29, 2004, the trial court, without

holding a hearing on the coram nobis petition and relying on the transcript of the evidentiary hearing, dismissed the petition. The petitioner appeals this dismissal.

## ANALYSIS

The trial court dismissed this petition because it both was untimely and without merit. We concur with both of those determinations, as we will explain.

A writ of error coram nobis is an extraordinary remedy by which the trial court may provide relief from a judgment under narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). The remedy is available by statute to a criminal defendant in Tennessee. See Tenn. Code Ann. § 40-26-105 (2003). This statute provides, in pertinent part:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

Id. Recanted testimony may qualify as newly discovered evidence. Mixon, 983 S.W.2d at 672. A new trial should be granted on the basis of newly discovered recanted testimony, however, only if:

> (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

Id. at 673 n.17 (citations omitted). The decision to grant or deny a petition for writ of error coram nobis based on newly discovered evidence lies within the sound discretion of the trial court. See Tenn. Code Ann. § 40-26-105 (2003); State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

The petitioner argues the post-conviction court erred in holding that the victim's recantation testimony at the post-conviction evidentiary hearing did not constitute newly discovered evidence. Specifically, he asserts that the victim's inconsistent statements, even if known to him prior to his

guilty pleas, constitute newly discovered evidence because they did not suggest that she would later recant. He argues it was only after he entered into a plea agreement that "anyone was aware that the [victim's] allegations were not true." We will review these claims.

It is clear from the post-conviction transcript that both the petitioner and his trial counsel were aware, prior to the petitioner's guilty pleas, that the victim had made inconsistent statements concerning her allegations against the petitioner. Trial counsel testified at the post-conviction hearing that the victim "made conflicting statements, yes sir. And I -- I was prepared to cross-examine her on those. And, certainly, [the petitioner] was aware of these . . . conflicting statements." In fact, the petitioner agreed during cross-examination at the post-conviction hearing that he, too, was aware of the victim's inconsistent statements:

> Q. You knew, also, that . . . [the victim] had been giving [the district attorney] trouble in the investigation of the prosecution?
>
> A. I know what [trial counsel] told me.
>
> Q. And what did he tell you?
>
> A. That [the victim] had changed – she'd changed her story and her testimonies wasn't [sic] matching up.
>
> Q. So you knew that was a problem before you pled guilty, that the state was having trouble even with [the victim]?
>
> A. No, sir. I didn't know it was trouble for the state. I knew it was – I thought it would help us. So, yeah, in a way I guess I thought it was damaging for the state. Yes, sir.
>
> Q. Okay. So it's not really newly discovered evidence. When you went to trial and you pled guilty, the fact is –
>
> A. I know that her changing her story wasn't new[ly] discovered evidence. Her testifying – that the sex did not happen was newly discovered evidence.

The victim's testimony from the post-conviction hearing was summarized by this court when we affirmed the post-conviction court's dismissal of the petition following the hearing:

> The victim of the attempted rape of a child charges also testified at the post-conviction hearing. She stated that at the time of the hearing, she was seventeen years old and that at the time of the crimes, she was twelve years old. She testified that in 1996, she

-4-

alleged that she and the Petitioner had engaged in sexual intercourse on more than one occasion. She reported that neither counsel for the Petitioner nor any lawyer employed by counsel interviewed her about the allegations. The victim maintained that if counsel had interviewed her, she would have told him "the truth . . . . [t]hat nothing had ever happened." She stated that by this, she meant that she never engaged in sexual intercourse with the Petitioner. The victim explained, "It's going to sound crazy, but I was jealous, because [the Petitioner] was getting all the attention from my mom. And I was sitting here thinking, and I thought, Maybe I can do something about it, and make him go to jail, and I could get all her attention; she'd be focused on me and nobody else." The victim admitted that she had slept in a bed with her mother and the Petitioner, but denied that any sexual contact occurred. In addition, the victim admitted that she had alleged that her father had sexually abused her while she was with him in Oregon, but she maintained that the allegations concerning her father were true. She testified that the allegations against her father "got her back to Tennessee with [her] mom," and she stated that she "figured if [she said] that again, [she] could get what [she] wanted like [she] did before." The victim also maintained that had she been called to testify at the Petitioner's trial, she would have testified that she and the Petitioner did not engage in sexual intercourse.

On cross-examination, the victim testified that she made the tape-recorded telephone call to the Petitioner because she "was trying to confuse him, trick him into saying what he did . . . ." She claimed that she told a doctor and a detective who questioned her about the case that she had not had sexual intercourse with the petitioner. She could not recall whether she reported this information before or after the petitioner became incarcerated.

Jerry Britt, 2002 WL 31126638, at **5-6.

On appeal, this court concurred that the victim's testimony at the post-conviction hearing did not constitute newly discovered evidence:

[A]s previously noted, the trial court discredited the victim's recantation at the post-conviction hearing. The trial court also made the following findings concerning the victim's recantation:

[Counsel], in discussing the evidence, said that he asked [the] prosecutor if . . . the victim . . . had

retracted [the allegations against the Petitioner]. And his testimony was: When I was having that transcribed, . . . [the victim] had made the statement that she lied. That it did not happen.

. . . .

It's just not newly discovered evidence. All of the things about her testimony, or potential testimony back then were known at this time. Nothing new has been discovered now. . . . When she . . . changed her mind and testified differently on several occasions about different things, [she] put everybody on notice . . . that her testimony could be anything from very strong for conviction, to exoneration. But that was not a chance that anybody wanted to take.

Id. at *14.

The petition for writ of error coram nobis, as did the amended post-conviction petition, argued that the recantation testimony was newly discovered evidence. In its order denying coram nobis relief, the trial court found, as it had following the evidentiary hearing for the amended post-conviction petition, that the victim's recantation was not newly discovered evidence:

The most significant problem for the petitioner is that the victim's alleged recantation is not newly discovered evidence.

The victim's statements about what happened have always been inconsistent. . . . She had recanted before the guilty plea. During the al[l]ocution of the guilty plea[,] it was brought out that the victim had said on some occasions that the petitioner had not done the things he was accused of. All of these things were known to the petitioner at time the plea was entered. The alleged recantation is not newly discovered evidence.

Further, this issue was raised in the post conviction petition and this court ruled then that the recantation was not newly discovered evidence. This petitioner was afforded a meaningful opportunity to present the recantation issue and due process requirements were satisfied.

The petitioner has presented the same claim in a petition for post-conviction relief and a petition for writ of error coram nobis that the victim's statement at the evidentiary hearing, she was not sexually abused by the defendant, is newly discovered evidence entitling him to relief. As the post-conviction court succinctly explained, when the defendant pled guilty, he and his attorney knew the victim had made conflicting statements as to what had occurred, including at least one claim that the petitioner had not committed the acts she had accused him of. Knowing this, the petitioner elected to plead guilty; and, the fact that the victim is again saying that the abuse did not occur is not newly discovered evidence. We concurred with this analysis affirming the dismissal of the amended petition for post-conviction relief and continue to agree. The petitioner has not presented newly discovered evidence; and, thus, his coram nobis petition is without merit.

Even if we accepted, *arguendo*, that the victim's recantation does constitute newly discovered evidence, the petitioner has an added burden because he pled guilty. There are three reasons a guilty plea can be set aside:

> "(1) for any fair and just reason before the sentence is imposed, Tenn. R. Crim. P. 32(f);
>
> (2) to correct manifest injustice after sentence but before the judgment becomes final, Tenn. R. Crim. P. (32)(f);
>
> (3) once the judgment is final, if the plea was not entered voluntarily, intelligently, and knowingly, or was obtained through the abridgment of any right guaranteed by the United States or Tennessee Constitutions, State v. Mackey, 553 S.W.2d 337, 340-341 (Tenn. 1977); Tenn. Code Ann. § 40-30-203."

Newsome v. State, 995 S.W.2d 129, 133 (Tenn. Crim. App. 1998) (quoting State v. Antonio Demonte Lyons, No. 01C01-9508-CR-00263, 1997 WL 469501, at *6 (Tenn. Crim. App. Aug. 15, 1997)). This court has previously explained that when a conviction stems from a guilty plea, "in order for a writ [of error coram nobis] to issue, the [petitioner] would have to present newly discovered evidence which would show that his plea was not voluntarily or knowingly entered." Id. at 134. The fact that the petitioner entered a best interest Alford plea does not change his burden or our analysis. See North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970) (holding the standard for a "best interest" or Alford plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

This court previously has concurred with the finding of the post-conviction court following the evidentiary hearing that the petitioner's guilty pleas were knowing and voluntary:

> As previously stated, we conclude that the Petitioner received the effective assistance of counsel, and therefore we conclude that the Petitioner was adequately informed when he entered his plea. Not

only did counsel inform the Petitioner of potential pitfalls were he to proceed to trial, but the trial court also informed the Petitioner at the plea proceeding that "if [he pled] guilty to the attempt to commit rape of a child [charges], [he] probably [would be required] to serve most of that sentence without being released on [the] release eligibility date." At the conclusion of the post-conviction hearing, the trial court found that the Petitioner received effective assistance of counsel and that he therefore entered his plea knowingly, voluntarily, and intelligently. The evidence contained in the record before us does not preponderate against that finding.

Jerry Britt, 2002 WL 31126638, at *13. The petitioner argues that if he had known about the recantation before his guilty pleas, it would have resulted in a different judgment at trial. As the court previously noted in the post-conviction hearing findings, the victim's testimony at trial could have been "anything from very strong for conviction, to exoneration. But that was not a chance that anybody wanted to take." Id. at *14. The petitioner is not entitled to habeas corpus relief because he has changed his mind as to the pleas of guilty:

> [I]f the plea agreement was negotiated in good faith, there are no allegations of fraud or misfeasance, and, in all other regards, the plea agreement was entered into voluntarily and knowingly, [a defendant] cannot [later] complain of that which he had willingly bargained for previously. A petition for the *writ of error coram nobis* is not intended to relieve a party of its own negligence, ignorance, or change of mind.

Newsome, 995 S.W.2d at 134.

Finally, the State argues that the trial court should have specifically found the petitioner's petition was barred by the statute of limitations, rather than simply finding the petition was "not timely filed." The statute of limitations for seeking a writ of error coram nobis is one year from the date the judgment becomes final in the trial court. See Tenn. Code Ann. §§ 40-26-105, 27-7-103; Mixon, 983 S.W.2d at 671. The petitioner concedes his petition was filed outside the one-year statute of limitations but nonetheless argues that due process considerations, as set forth in Workman v. State, 41 S.W.3d 100 (Tenn. 2001), and State v. Ratliff, 71 S.W.3d 291 (Tenn. Crim. App. 2001), require that the statute of limitations be tolled in his case. We respectfully disagree.

In Workman, our supreme court held that due process required the tolling of the one-year statute of limitations where a petitioner in a capital case sought a writ of error coram nobis based on newly discovered exculpatory evidence, concluding that the petitioner's "interest in obtaining a hearing to present newly discovered evidence that may establish actual innocence of a capital offense far outweighs any governmental interest in preventing the litigation of stale claims." 41 S.W.3d at 103. Similarly, this court held in Ratliff that due process required that the statute of limitations for

bringing a writ of coram nobis be tolled in a noncapital case where the petitioner had newly discovered evidence in the form of a victim's recantation. 71 S.W.3d at 297-98.

Unlike the situations presented in Ratliff and Workman, the evidence the petitioner is relying on in this case is not newly discovered and, in fact, he knew at the time of his pleas of guilty the victim had made at least one statement exonerating him. Knowing this, the petitioner made knowing and voluntary pleas of guilty and subsequently presented an untimely and unmeritorious claim of newly discovered evidence. We conclude, therefore, that due process does not require the tolling of the statute of limitations.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the order of the trial court dismissing the petition.

                                       _____
                                       ALAN E. GLENN, JUDGE