IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
JULY SESSION, 1998

FILED

September 30, 1998

Cecil W. Crowson
Appellate Court Clerk

JAMES E. NEWSOME,              )
                              )     No. 01C01-9710-CR-00459
          Appellant           )
                              )
vs.                           )     DAVIDSON COUNTY
                              )
                              )     Hon. THOMAS H. SHRIVER, Judge
STATE OF TENNESSEE,           )
                              )     (Writ of Error Coram Nobis)
          Appellee            )


For the Appellant:

**David A. Collins**
211 Printers Alley Bldg., 4th FL
Nashville, TN  37201

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Daryl J. Brand**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493


**Victor S. (Torry) Johnson III**
District Attorney General

**Pam Anderson**
Asst. District Attorney General
Washington Square, Suite 500
222-2nd Avenue North
Nashville, TN  36201-1649


OPINION FILED: _____

AFFIRMED


**David G. Hayes**
Judge

## OPINION

The appellant, James E. Newsome, appeals the judgment of the Davidson County Criminal Court denying his petition for *writ of error coram nobis*. Specifically, the appellant contends that the trial court abused its discretion in finding that the "newly discovered evidence" lacked credibility. On May 21, 1992, the appellant entered a guilty plea to one count of second degree murder and was sentenced to eighteen years in the Department of Correction as a Range I offender.[1] No direct appeals were taken by the appellant. He is currently incarcerated at Turney Center Industrial Farm and Prison in Only, Tennessee.

After review of the record and the applicable law, we affirm the decision of the trial court dismissing the appellant's petition for *writ of error coram nobis*.

**Background**

In February 1996, the appellant filed a *pro se* petition for post-conviction relief alleging ineffective assistance of counsel and "newly discovered evidence." Counsel was appointed and, on October 22, 1996, an evidentiary hearing was conducted by the trial court. At the conclusion of the hearing, the trial court denied post-conviction relief as to the issue of ineffective assistance of counsel, but granted the appellant leave to file a petition for *writ of error coram nobis* in order to raise his claims involving newly discovered evidence, *i.e.*, that the true perpetrator of the murder had confessed. On November 20, 1996, the appellant filed a petition for *writ of error coram nobis*. A hearing was conducted on March 7, 1997.

---

[1]This plea resulted from the 1991 shooting death of Michael West outside a North Nashville night club. West was killed by a gunshot to his back at very close range.

At the hearing, evidence relevant to the *coram nobis* claim presented at the post-conviction hearing was reconsidered by the court. At the post-conviction hearing, the appellant testified that, on December 28, 1995, while confined at the Turney Center, fellow inmate Jon Woodruff,[2] confessed to him that "he [was] the one that actually shot Michael West that night." Two to three weeks after Woodruff admitted his culpability in the crime, the appellant approached Woodruff and asked him to sign an affidavit verifying his earlier confession. This affidavit was subsequently notarized, on January 13, 1996, by Bruce Roberts, the laundry manager and notary at the Turney Center.[3] The appellant explained that he had agreed to plead guilty to second degree murder because, at the time, he was also facing charges of voluntary manslaughter and feared consecutive sentences. The plea agreement on the present charge provided that the appellant's sentences would run concurrently.

The appellant presented several witnesses to confirm Woodruff's subsequent confession to West's murder. Specifically, the appellant offered the testimony of fellow inmates, Malcolm Fuller and Greg Turner who verified that they had overheard Woodruff tell the appellant that he shot Michael West. Malcolm Fuller had been the appellant's cellmate for two years; Greg Turner admitted that he had been friends with the appellant for the past four to five years. John Smith, another

---

[2]Woodruff, along with the appellant, was a suspect in West's 1991 murder.

[3]The affidavit reads:

I, <u>Jon Woodraft</u>, after being duly sworn in accordance with the law, deposes ans says the following:

On the date of December 3, 1991 I Jon Woodraft got into an altercation with Mike West on Joe Johnson in Nashville, Tennessee that led into a shootout between the two of us above listed persons. I shot Mr. West into the back area of his body with a .357 Magnum handgun. This was after he made a threat about killing me and reached for his gun that's when I shot him once in the back area at close range. Another suspect was arrested and took a plea because he didn't know about justice and didn't want to take chances of facing a life sentence. When truly and really I was the one that committed the crime and tried to save myself from prosecution by acting as if I knew him and I saw him do it. I finally admitted this to him and I finally met him on December 28, 1995.

<u>Jon Woodruff</u> [cursive]

inmate, also testified that, while helping Woodruff move his property to his unit, Woodruff admitted that he had committed the homicide for which the appellant had been convicted.

Jon Woodruff testified that he was currently serving a life sentence for murder at the Turney Center. He denied ever having a conversation with the appellant on December 28, 1995. Although he admitted that the signature on the affidavit was his, he denied reading the substance of the affidavit prior to signing and refused to answer any questions regarding the truth of the matter asserted in the affidavit.

Metro Police Department Detective David Miller, the investigating officer in the 1991 shooting death of Michael West, testified that the victim was killed as the result of a gunshot wound to the back. The autopsy report revealed that the victim was shot at a very close range with a .357 revolver. A .357 revolver was later located underneath a waterbed in the residence where the appellant was living.

The investigation of the homicide led police to two suspects, the appellant and Jon Woodruff. A polygraph examination was given to both individuals. During the post- examination interview, Jon Woodruff stated that the appellant was the shooter and disclosed his location and the appellant's location during the shooting. Similarly, the appellant admitted that he was the shooter and disclosed his angle and distance from the victim. Detective Miller added that an eyewitness to the account, Clarence Goins, stated that he observed the appellant "running behind the victim with the gun." Mr. Goins additionally stated that, "just after the shooting and before they left the scene, [the appellant] told him, quote, I just shot a N-word."

The trial court, after considering this evidence, denied the appellant's petition. In reaching its decision, the court found that, although the evidence met the criteria for "newly discovered evidence," the subsequent confession of Jon Woodruff lacked

4

credibility. Specifically, the court noted that the appellant had failed a polygraph examination and confessed to the homicide; the murder weapon was located under the appellant's bed; Jon Woodruff and Clarence Goins had both named the appellant as the shooter; and that the appellant knowingly and voluntarily entered his guilty plea. Moreover, the court noted the variance between the spelling of Woodruff's name and the style of the writing in the body of the affidavit and the signature line, "giving rise to the strong suspicion that . . . [someone else] wrote the confession and that Woodruff was induced to sign by coercion or bribery."

**Analysis**

The appellant contends that the trial court abused its discretion in denying his petition. The State makes a two pronged response to the appellant's assertion. First, the State contends that a guilty plea may not be set aside by means of a petition for *writ of error coram nobis* based on newly discovered evidence. Second, the State argues that the trial court properly found that the newly discovered evidence lacked credibility, and, thus, acted within its discretion in denying the petition for *writ of error coram nobis*.

A *writ of error coram nobis* is available to a defendant in a criminal prosecution. Tenn. Code Ann. § 40-26-105 (1997); State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). However, the writ is an exceedingly narrow remedy appropriate only when an issue was not addressed or could not have been addressed at trial because it was somehow hidden or unknown and would have prevented the rendition of the judgment had it been known to the court. See Tenn. Code Ann. § 40-26-105; Hart, 911 S.W.2d at 374; State v. Hooper, No. 03C01-9701-CR-00035 (Tenn. Crim. App. at Knoxville, Mar. 6, 1998). Hence, the writ will lie for subsequently or newly discovered evidence if the

5

petition relates (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner.[4]  Hart, 911 S.W.2d at 374-375.

In what appears to be a question of first impression, the State argues that a *writ of error coram nobis* will not issue to set aside a guilty plea that was voluntarily and knowingly entered.  After a review of the law, the principles behind the issuance of the writ, and the law of sister jurisdictions, we find the State's argument well taken.[5]

> There are three methods by which one can set aside a guilty plea:
>
> (1) for any fair and just reason before the sentence is imposed, Tenn. R. Crim. P. 32(f);
>
> (2)  to correct manifest injustice after sentence but before the judgment becomes final, Tenn. R. Crim. P. 32(f); and
>
> (3)  once the judgment is final, if the plea was not entered voluntarily, intelligently, and knowingly, or was obtained through the abridgement of any right guaranteed by the United States or Tennessee Constitutions, State v. Mackey, 553 S.W.2d 337, 340-341 (Tenn. 1977); Tenn. Code Ann. § 40-30-203.

State v. Lyons, No. 01C01-9508-CR-00263 (Tenn. Crim. App. at Nashville, Aug. 15, 1997), *reconsideration denied*, (Sept. 19, 1997).  Thus, in order for a writ to issue, the appellant would have to present newly discovered evidence which would show

---

[4]Compare  Tenn. Code Ann. § 40-30-217(a)(2) (1997) (post-conviction petition may be reopened only on the basis of newly discovered scientific evidence establishing the actual innocence of the petitioner).

[5]We note that a *writ of error coram nobis* will only issue one year after the judgment becomes final.  Tenn. Code Ann. § 27-7-103 (1980); Hicks v. State, No. 03C01-9608-CR-00296 (Tenn. Crim. App. at Knoxville, Mar. 3, 1998).  Although it appears from the record that the appellant's petition was filed beyond the one year statute of limitations applicable to *writs of error coram nobis*, the statute of limitations is an affirmative defense which must be specifically plead or is deemed waived.  See  State v. Mixon, No. 02C01-9507-CC-00204, footnote 1 (Tenn. Crim. App. at Jackson, Aug. 28, 1997), perm. to appeal granted, (Tenn. Apr. 13, 1998) (citing Sands v. State, 903 S.W.2d 297, 299 (Tenn. 1995)).  The State failed to assert the time period in the case *sub judice.*

that his plea was not voluntarily or knowingly entered. However, the newly discovered evidence asserted by the appellant fails to affect the voluntariness of his 1992 guilty plea.

An otherwise valid guilty plea does not become involuntary merely because it is induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial. Nor does it become involuntary by the mere fact that a third party has subsequently confessed to the crime as such assertions are not uncommon and must be approached with some skepticism. See Brown v. State, 955 S.W.2d 901, 902 (Ark. 1997).

By pleading guilty, the appellant admitted his factual guilt and waived his right to confront his accusers. See, e.g., People v. Jackson, 620 N.Y.S.2d 240, 241 (N.Y.Co.Ct. 1994). He may not seek, after the judgment has become final, to later recant his admission as to those facts by an allegation that a third party has confessed. Moreover, a third party confession is not so much "newly discovered evidence" as it is "newly disclosed" to the court. See Travis v. State, CR-92-958 (Ala. Crim. App. Apr. 18, 1997) (*not yet released for publication*). There can be no doubt that, at the time the defendant entered his guilty plea, he knew that either he did or did not commit the murder for which he had been convicted. See Travis, CR-92-958. In other words, a subsequent third party confession does not affect the voluntariness of a guilty plea. Thus, if the plea agreement was negotiated in good faith, there are no allegations of fraud or misfeasance, and, in all other regards, the plea agreement was entered into voluntarily and knowingly, he cannot now complain of that which he had willingly bargained for previously.[6] A petition for the *writ of*

---

[6]Our holding in this matter is limited to the premise that a subsequent third party confession will not affect the voluntariness of a guilty plea, thus, precluding the issuance of a *writ of error coram nobis* based on newly discovered evidence. However, we do acknowledge that should "newly discovered evidence" effect the voluntariness of a guilty plea, a *writ* may properly lie.

7

*error coram nobis* is not intended to relieve a party of its own negligence, ignorance, or change of mind.

Although we are not advocating the persecution of the innocent, there is a need for finality of legal decisions. At some point, the proceedings must come to a halt despite the prospect of allegations without end that something went wrong. The traditional method for addressing actual innocence based upon newly discovered evidence which is procedurally barred from the courts is through executive clemency. See Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 860 (1993). If the appellant has not already pursued this option, it is still available to him. Tenn. Code Ann. §§ 40-27-101 through -109 (1997); Hicks, No. 03C01-9608-CR-00296.

Assuming arguendo that relief could be available in this context, we cannot conclude, as argued by the appellant, that the trial court abused its discretion in denying the appellant a new trial. Specifically, the appellant asserts that there is "absolutely no proof in the record" to support the trial court's finding that "the Woodruff affidavit was signed as a result of 'coercion or bribery.'"

The decision to grant or deny a petition for the *writ of error coram nobis* on the ground of newly discovered evidence rests within the sound discretion of the trial court. Hart, 911 S.W.2d at 375; Trammell v. State, No. 01C01-9602-CC-00083 (Tenn. Crim. App. at Nashville, Jul. 11, 1997), perm. to appeal denied, (Tenn. Apr. 13, 1998). In exercising its discretion, the trial court must determine the credibility of the witnesses who testify in support of the accused's *coram nobis* application. Id. If the trial court does not believe that the witnesses presented by the accused are credible, the court should deny the application. Id. Moreover, before relief may be granted, it must be established, and the trial court must find, that the newly discovered evidence may have resulted in a different judgment had it been presented at the trial. Id. This rule presupposes that the evidence would be

8

admissible pursuant to the applicable rules of evidence and is material to the issues or grounds raised in the petition. Id.

First, the appellant presented several witnesses who testified that they overheard Jon Woodruff confess to the homicide for which the appellant stands convicted. Such hearsay evidence is not legal evidence and is not admissible to show that someone other than the accused committed the offense at issue. A defendant may disprove his guilt by proving the guilt of some other person; but, this must be done with legal evidence and not by the testimony of witnesses who heard another admit that he committed the offense. Second, the proof supporting the appellant's conviction for the murder of Michael West includes a confession by the appellant, the testimony of two eyewitnesses, and the discovery of the murder weapon beneath the appellant's bed. The "newly discovered evidence" asserted by the appellant, *i.e.*, that Jon Woodruff was the true killer, is merely contradictory of the overwhelming proof. Newly discovered evidence which serves no other purpose than to contradict or impeach the evidence supporting the conviction will not justify the granting of a petition for the *writ of error coram nobis* when the evidence, if introduced would not have resulted in a different judgment. Hart, 911 S.W.2d at 375. Finally, this court will not second guess the trial court's evaluation of the witnesses' credibility. Accordingly, we cannot conclude that the trial court abused its discretion in denying the relief sought by the appellant.

For the reasons discussed herein, the appellant's petition for the *writ of error coram nobis* was properly denied.

_____
DAVID G. HAYES, Judge

9

CONCUR:

_____
PAUL G. SUMMERS, Judge


_____
JERRY L. SMITH, Judge