IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2006

## ANTONIO BONDS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 98-08055      Paula Skahan, Judge**

_____

**No. W2006-00343-CCA-R3-CO  - Filed December 6, 2006**

_____

The Appellant, Antonio Bonds, who is currently serving a sentence of life imprisonment for first degree murder, appeals the Shelby County Criminal Court's dismissal of his petition for writ of error coram nobis.  The trial court summarily dismissed Bonds' petition upon grounds that it was barred by the statute of limitations.  On appeal, Bonds asserts that the trial court erred in dismissing the petition as barred by the statute of limitations without first making a determination of whether due process should toll the statute.  Following review of the record, we affirm the dismissal.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Antonio Bonds, *Pro Se*, Tiptonville, Tennessee.

Robert E. Cooper, Jr., Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Procedural History**

On September 30, 2000, the Appellant was convicted by a Shelby County jury of the first degree murder of David Stewart and subsequently sentenced to life imprisonment.  The Appellant filed a direct appeal to this court challenging only the sufficiency of the evidence, and a panel of this court affirmed the conviction.  *State v. Antonio Bonds*, No. W2000-01242-CCA-R3-CD (Tenn. Crim. App. at Jackson, Aug. 13, 2001).   The relevant facts of the case, as established on direct appeal, are as follows:

On January 15, 1998, the body of the twenty-year-old victim, David Stewart, was found in a vacant parking lot near Humes High School in Memphis . . . . An autopsy revealed that the cause of death was multiple gunshot wounds . . . .

When the Appellant . . . was eleven years old, he dated Tamekia Mosley for a period of approximately two years. During this period, Mosley, the victim and the Appellant were all close friends. The relationship between the Appellant and Mosley, however, ended in 1992 or 1993. After the break-up, the victim and the Appellant remained friends but neither had any further contact with Mosley.

Several years later, in December of 1997, Mosley contacted the victim and requested that he reunite her with the Appellant. The victim complied and the relationship between the Appellant and Mosley renewed. Unbeknownst to Mosley, however, the Appellant was also dating Jennifer Tyler, the mother of his two-year-old daughter. After Tyler learned of the Appellant's renewed relationship with Mosley, "numerous telephone [and confrontational] conversations" occurred between the two. The proof established that Mosley's telephone number was given to Tyler by the victim.

On January 13, 1998, Tyler attempted to enter the Appellant's apartment but was refused entry by the Appellant because Mosley was inside. On this occasion, Tyler engaged the Appellant in a discussion over Mosley's presence at the apartment and was overheard telling the Appellant to "tell the bitch to come outside."

On January 14, 1998, Mosley spent the night with the Appellant. As she was leaving the next day, on January 15, 1998, she found a message written in lipstick on her car which said, "Go away whoever; I'm watching you." Mosley went back inside, told the Appellant what she found, and they walked outside together to look at her vehicle. Upon seeing the message, the Appellant became angry and stated, "I'm going to get that boy." Mosley told the Appellant that it was not the victim's fault that Tyler wrote on her car, but the Appellant insisted that the victim "talked too much" and must have told Tyler what Mosley's car looked liked in order for Tyler to know which vehicle to leave the message on. The Appellant immediately put his daughter in his car and told Mosley that he was going to get the child some food.

About two hours later, Mosley received a call from the Appellant who said, "you don't have to worry about [the victim] anymore." When she asked what he meant, he said he had to go. Later that night, the Appellant again called Mosley. This time the Appellant explained that he had gone by the victim's house, picked him up, and drove around for some time questioning the victim about what he had told Tyler. The Appellant further stated that he shot and killed the victim in a vacant parking lot near Humes High School. The Appellant told Mosley that the victim "talked too much" and that he blamed the victim for their prior breakup in 1993.

Later that same evening, the Appellant stopped by Tyler's house with their daughter. Their daughter grabbed a piece of chair shaped like a gun and pointed it at Tyler saying, "pow-pow." The Appellant said, "your boy is gone" and explained to Tyler that he had gone by the victim's house earlier that day, grabbed him and shot him near Humes High School. He further explained that the victim felt nothing initially, so he kept shooting. Later, when Tyler was visiting the Appellant in jail, he again stated, "your boy is gone,." At trial, Tyler admitted to being the person who wrote on Mosley's car and verified that the victim did, in fact, tell her the make and model of Mosley's vehicle. She explained that she was angry because several days prior to the incident the Appellant told her that he and Mosley were not dating.

The Tennessee Supreme Court denied permission to appeal on December 27, 2001. *Antonio Bonds v. State*, No. W2003-00260-CCA-R3-PC (Tenn. Crim. App. at Jackson, Nov. 14, 2003). On January 10, 2003, the Appellant filed a petition for post-conviction relief alleging ineffective assistance of counsel, which the post-conviction court dismissed as time-barred by the one-year statute of limitations. A panel of this court affirmed that dismissal on November 14, 2003. *Id.* The supreme court denied the Appellant's application for a discretionary appeal on March 8, 2004. *Antonio Bonds v. State*, No. W2003-00260-SC-R11-PC (Tenn., Mar. 8, 2004).

On December 6, 2005, the Appellant filed the instant Petition for Writ of Error Coram Nobis alleging as grounds newly discovered evidence. Specifically, he identified as new evidence: (1) his jail visitation records, which he asserts would have established inconsistencies in the testimony of the State's witness, Jennifer Tyler; (2) Jennifer Tyler's arrest history, which was withheld by the State, which would have established that Tyler deliberately presented false testimony; and (3) a transcript of the Appellant's preliminary hearing, which would have established inconsistencies in the trial testimony of the State's witness, Tamekia Mosley. The Shelby County Criminal Court entered an order on January 17, 2006, dismissing the petition as untimely. This appeal followed.

**Analysis**

A writ of error coram nobis is an extraordinary remedy by which the trial court may provide relief from a judgment under narrow and limited circumstances. *State v. Mixon*, 983 S.W.2d 661, 666 (Tenn. 1999). The remedy is available by statute to a criminal defendant in Tennessee. *See* T.C.A. § 40-26-105 (2003). This statute provides, in pertinent part that:

The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

*Id*. Thus, in order to be entitled to a new trial based upon newly discovered evidence, a defendant must show that he exercised due diligence, that the newly discovered evidence is material, and that it would likely change the result if produced and accepted by a jury. *See Newsome v. State*, 995 S.W.2d 129, 133 (Tenn. Crim. App. 1998). The "purpose of this remedy 'is to bring to the attention of the court some fact unknown to the court, which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (1966)).

On appeal, the Appellant alleges that " before the trial court denied his petition as untimely for failing to file within a timely manner . . ., it failed to determine whether due process toll[ed] the statute of limitation[s] . . . ." The Appellant concedes in his petition that the petition was untimely filed; however, the petition expressly asserts that "the writ of error coram nobis one year statute of limitations is required to be tolled under due process principles . . . ." Thus, we would agree with the Appellant that the trial court's inquiry ended prematurely and that a determination should have been made with regard to whether due process required a tolling of the statute of limitations.[1]

A petition for writ of error coram nobis must usually be filed within one year after the judgment becomes final. T.C.A. § 27-7-103 (2003); *Mixon*, 983 S.W.2d at 670. Notwithstanding, due process may require that the statute of limitations for filing a petition for writ of error coram nobis be tolled. *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001) (holding due process required tolling of the statute of limitations where Workman's interest in obtaining a hearing to present newly discovered evidence that may establish actual innocence of a capital offenses far outweighs any governmental interest in preventing the litigation of stale claims); *State v. Ratliff*, 71 S.W.3d 291, 298 (Tenn. Crim. App. 2001) (holding due process required tolling of the statute of limitations where the petition was filed fourteen days later and that the "great weight of the evidence against [the petitioner]" came from the victim, who recanted her testimony). "[B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Workman*, 41 S.W.3d at 102.

The Appellant seeks coram nobis relief based upon his allegation of the newly discovered evidence of: (1) the transcript of his preliminary hearing; (2) jail "Visitation record log"; and (3) Jennifer Tyler's arrest history and disposition. With regard to the transcript of his general sessions preliminary hearing, he asserts that the transcript would establish that the State's witness, Tamekia

---

[1]The determination of whether due process is implicated generally requires the trial court's resolution of disputed facts. No such resolution was made in this case. In this regard, we would note that this court does not possess fact-finding authority as our jurisdiction is appellate only. *See* T.C.A. § 16-5-108 (2003). Nonetheless, because the record is sufficient under the facts of this case to permit a meaningful review of the issue raised, remand under these circumstances is unnecessary.

-4-

Mosley, knowingly presented false testimony at trial. With regard to the jail visitation log, he asserts that Jennifer Tyler's testimony at trial that, during a jail visit, he confessed the homicide to her is contradicted by the fact that the visitation log fails to show that any such visit occurred. Finally, he asserts that Tyler's arrest history would show that Tyler's last name is actually Perry and that she was arrested fourteen days before testifying against him, and the charge was "dismissed nine days after she testified . . . ."

We agree with the State that these alleged revelations are not newly discovered within the meaning of the coram nobis statute as the Appellant either clearly knew or had access to the information at trial or during the one-year limitations period immediately following. The Appellant himself admits that trial counsel gave him a copy of the preliminary hearing transcript during the trial. Clearly, he cannot now assert, over four years later, that it is newly discovered. Additionally, the same analysis would also apply to the Appellant's knowledge of those who visited him in jail or his access to the visitation records. He was clearly aware of their existence and should have been aware of their content, which he now claims shows that Tyler never visited him in jail, thus disproving her trial testimony that the Appellant confessed the murder to her during a jail visit. Likewise, Tyler's criminal record was available at the time of trial. The Appellant's argument that he took no action because trial counsel told him that there was no evidence which would help his case is without merit. The Appellant himself must exercise due diligence in order to obtain evidence which is available or to challenge trial counsel's failure to do so within the post-conviction context. Having concluded that the alleged disclosures are in fact not newly discovered and that the Appellant failed to exercise due diligence in procuring the information at trial or through the remedy of a post-conviction proceeding, it is clear that the Appellant has failed to state a prima facie claim for coram nobis relief.

The Appellant also appears to allege that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). Specifically, he asserts that "because even though the documents [were] requested for the prosecution failed to turn over all of the evidence in favor of the [Appellant's] innocence, impeaching information, arrest histories of all potential State's witnesses, exculpatory statements made by the [Appellant], and to give notice of the State's intention to use an alleged confession during a visitation visit would be used as evidence to prove the [Appellant's] guilt." However, except in rare cases, "matters appropriate for post-conviction relief - - such as *Brady* violations - - are not appropriate for coram nobis proceedings." *Hershell Lee Kinnaird v. State*, No. M2000-00037-CCA-R3-PC (Tenn. Crim. App. at Nashville, Aug. 7, 2001). "The writ is not designed to address *Brady* violations; hence, the statute contains no requirement that the State withheld or suppressed the subsequently or newly discovered evidence." *Id.* The Appellant, however, is correct that this court has previously held that certain *Brady* violations could be considered "newly discovered evidence" in a petition for a writ of error coram nobis. *See Freshwater v. State*, 160 S.W.3d 548 (Tenn. Crim. App. 2004). However, in order for the *Brady* violations to be appropriate issues in this context, the petitioner must show that the claims could not have been previously litigated. *Id.* at 555-56. Clearly, that is not the case before us as all these alleged violations could have been previously litigated in a timely filed post-conviction petition. Thus, the Appellant's alleged *Brady* violations are not appropriate issues in a petition for coram

nobis relief. Accordingly, we conclude that the Appellant has failed to advance, nor do we find, any ground for which the statute of limitations should be tolled.

## CONCLUSION

Based upon the foregoing, the Shelby County Criminal Court's dismissal of the Appellant's petition for writ of error coram nobis is affirmed.

_____
DAVID G. HAYES, JUDGE