IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 24, 2009

## ARTHUR W. STAMEY, III v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Bradley County**
**No. M-04-418     Amy Reedy, Judge**

_____

**No. E2009-00996-CCA-R3-CD - Filed February 11, 2010**

_____

The petitioner, Arthur W. Stamey, III, appeals the dismissal of his petition for writ of error coram nobis. In this appeal, he contends that the coram nobis court erred by permitting two witnesses to testify for the State and by concluding that those witnesses were more credible than the petitioner. He also claims that the court erred by concluding that a letter of recantation written by the victim did not constitute newly discovered evidence. Discerning no error, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

David K. Calfee, Cleveland, Tennessee, for the appellant, Arthur W. Stamey, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; R. Steven Bebb, District Attorney General; and Stephen M. Hatchett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On February 3, 2004, the petitioner pleaded guilty to one count of aggravated sexual battery and one count of failure to appear in exchange for an effective sentence of nine years to be served at 100 percent by operation of law. *See Arthur W. Stamey, III v. State*, No. E2005-02261-CCA-R3-PC, slip op. at 1 (Tenn. Crim. App., Knoxville, Apr. 7, 2006) (*Stamey I*); *see also* T.C.A. § 40-35-501(I) (2003). Following his guilty plea, the petitioner filed an unsuccessful motion to withdraw his plea, *see Stamey I*, slip op. at 2, and

1

a similarly unsuccessful petition for post-conviction relief, *id.* This court affirmed the denial of post-conviction relief. *Id.*, slip op. at 7. The petitioner then filed a petition for writ of habeas corpus, the denial of which this court affirmed on direct appeal. *See Arthur W. Stamey, III v. State*, No. E2006-02047-CCA-R3-HC (Tenn. Crim. App., Knoxville, Aug. 17, 2007) (*Stamey II*).

On February 29, 2008, the petitioner filed a petition for writ of error coram nobis, alleging that newly discovered, exculpatory evidence rendered his guilty pleas unknowing and involuntary and that due process required the tolling of the coram nobis statute of limitations. *See Arthur W. Stamey, III v. State*, No. E2008-01061-CCA-R3-PC (Tenn. Crim. App., Knoxville, Jan. 12, 2009) (*Stamey III*). At issue were three documents: a written summary of an interview of the victim at the Children's Advocacy Center ("CAC") on May 31, 2002, during which the victim denied any inappropriate contact with the petitioner; a written summary of an interview of the victim at the CAC on May 22, 2003, during which the victim claimed that the petitioner had forced her to rub lotion on his penis; and Department of Children's Services ("DCS") field notes dated May 28, 2002, which stated that the victim denied touching the petitioner's penis. The petitioner claimed that the State withheld these documents until his parents filed a request for information following the denial of his petition for writ of habeas corpus. Holding that the coram nobis court "should not have dismissed the petition as time-barred in the absence of any findings regarding the petitioner's due process tolling claim," we reversed the judgment of that court and remanded the case for a hearing to "determine whether the State withheld the statements at issue as the petitioner alleges and, if so, whether the bar of the statute of limitations would deprive the petitioner of the opportunity to present his claims at a meaningful time and in a meaningful manner." *Id.*, slip op. at 4.

Upon remand, the coram nobis court appointed counsel, and counsel filed a memorandum of law in support of the petitioner's claim that principles of due process required the tolling of the coram nobis statute of limitations. Noting that the "State has never contradicted [the petitioner's] claim that these interviews were not provided to him prior to entry of his plea," the petitioner argued that the State's withholding of the evidence in question had prevented him from presenting his claim in a meaningful time and manner. The petitioner also filed a motion to amend his petition for writ of error coram nobis to include in his claim of newly discovered evidence a letter of recantation written by the victim. The hand-written letter, addressed "Dear Judge," contains allegations that the victim's father's girlfriend, Deanna McCracken, coerced the victim "to tell a story about [the petitioner] making [her] touch him in the private." The victim claimed that Ms. McCracken threatened her and asked the judge to "please let [the petitioner] out."

The State noted that the petitioner's coram nobis claim as it related to the

2

recantation letter was barred by the one-year statute of limitations, but it did not oppose the petitioner's amendment of his coram nobis petition to encompass the recantation letter. The coram nobis court conducted an evidentiary hearing, which was split into two separate hearings, to determine whether due process principles required the tolling of the statute of limitations with regard to the petitioner's claims and whether the recantation letter constituted newly discovered evidence.

At the evidentiary hearing, former Bradley County Assistant District Attorney General John Williams testified over the petitioner's objection that at the time the petitioner was charged in this case, the district attorney general's office operated an "open file" discovery policy. He explained that his "files were available for review on appointment and on even walking into the office if you wanted to take a look at the file." Mr. Williams recalled specifically speaking to the petitioner's trial counsel, District Public Defender Richard Hughes, regarding discovery in the petitioner's case. Mr. Williams could not recall having seen the DCS field notes prior to the evidentiary hearing and explained that as it was not his general practice to subpoena DCS records, he had no recollection of having requested the victim's DCS records in this case.

During cross-examination, Mr. Williams conceded that he had no "specific memory of handing [the CAC reports] over personally," but he reiterated that he utilized an open file policy "particularly for lawyers who we worked with frequently such as Mr. Hughes." Mr. Williams stated that because he did not know "for sure where [the DCS field notes] came from," he could not state with any certainty that the DCS field notes had been disclosed to either the petitioner or his trial counsel.

Mr. Hughes testified that the case file he maintained while representing the petitioner contained copies of the DCS field notes and of each written interview summary from the CAC. Although he could not recall specifically discussing the DCS field notes or the May 31, 2002 CAC interview with the petitioner, he did recall discussing the May 22, 2003 CAC interview with the petitioner. Mr. Hughes admitted that he did not "have anything noted in the file as to when [he] received this information but both interviews are in [his] case file and so [he] received that through the discovery process." He added, "There's no other way I would have received that information."

During cross-examination, Mr. Hughes reiterated that he did not "have any specific notes" that he had shared the information but stated that he "would have certainly gone over the discovery" with the petitioner. He elaborated, "I have no reason to believe that I didn't go over at least that second Child Advocacy Center interview where the child made a disclosure." Mr. Hughes conceded that he did not know how he came to be in possession of the DCS field notes and admitted that he had no "independent recollection of going over

[the DCS field notes] with [the petitioner]."

The petitioner testified that he was first charged with the aggravated sexual battery of the victim in 2004 and that he was represented at that time by Mr. Hughes. The petitioner maintained that Mr. Hughes had never shown him either CAC interview or the DCS field notes prior to his pleading guilty in this case. He stated that following the denial of his petition for writ of habeas corpus, he "decided to see what the [d]istrict [a]ttorney's office had on [him] so [he] wrote them a letter and they responded . . . that they were not obligated to" provide him with the information he had requested. Thereafter, his parents visited the office of the district attorney at his request, but someone in the office told his parents that "they couldn't give [his parents] a copy at that time" because the copy machine was broken. Approximately two weeks later, his parents "received an envelope" containing, among other things, the documents at issue in the coram nobis proceeding. The petitioner insisted that he had never seen the documents until receiving them in 2007. He insisted that had he been aware of the documents, he would not have pleaded guilty and would have proceeded to trial.

Peter Bellavia, the petitioner's father, testified that at the petitioner's request, he contacted the district attorney's office "[t]o get copies of whatever papers the [d]istrict [a]ttorney had on this case." He stated that he telephoned the office "several times" and that his "wife called once or twice" before they "finally went down there in person." He recalled that "about two weeks after that" they received an envelope containing documents that he then mailed to the petitioner. Mr. Bellavia admitted during cross-examination by the State that he did not request information from the public defender's office concerning the petitioner's case.

At the second hearing, the State argued that the petitioner's motion to amend his coram nobis petition did "not make the necessary allegations to toll the statue of limitations on the writ of error coram nobis" but noted that "because of the history of this case," it did not object to the court's "accepting the amended petition and ruling on it as written . . . so that this matter is concluded today in its entirety." The State also argued that the letter of recantation, which was the subject of the amended petition, could not be newly discovered evidence "because there's no proof before the [c]ourt that this letter existed at the time [the petitioner] plead[ed] guilty" and because the petitioner had consistently maintained that "this victim is not telling the truth." The petitioner argued that the recantation letter was newly discovered evidence and that its recent discovery provided the grounds for tolling the statute of limitations.

Following argument by the parties, the coram nobis court ruled that it would not "hear any other proof because the letter speaks for itself and in fact it's somewhat

4

consistent with some of the other exhibits." The court accredited Mr. Williams' testimony that his office practiced open file discovery at the time of the petitioner's trial and that his file "indicated that the CAC reports had been handed over." The court also accredited Mr. Hughes' testimony that he had copies of the CAC reports and the DCS field notes in his possession prior to the petitioner's pleading guilty and that he had reviewed "the most incriminating" of the CAC reports with the petitioner. The court specifically concluded that the petitioner's testimony was not credible. Based on this evidence, the court ruled that none of the documents presented in the original petition for writ of error coram nobis was newly discovered evidence. The court also found that the recantation letter did not qualify as newly discovered evidence because it was no "different than the interviews that the child was giving back in 2002 and 2003." In consequence, the court denied the petition for writ of error coram nobis.

In this appeal, the petitioner asserts that the coram nobis court erred by permitting the State to present the testimony of Mr. Williams and Mr. Hughes at the evidentiary hearing when the State had previously conceded the petitioner's version of his receipt of the CAC records and DCS field notes. The petitioner also asserts that the coram nobis court erred by concluding that the accredited testimony of Mr. Williams and Mr. Hughes supported the denial of coram nobis relief when neither Mr. Williams nor Mr. Hughes testified that the petitioner had personally reviewed the documents prior to pleading guilty.

*I. Testimony of Mr. Williams and Mr. Hughes*

The petitioner first contends that the State should not have been allowed to present proof that the CAC reports and DCS field notes had been disclosed prior to the petitioner's trial because the State had previously failed to challenge the petitioner's assertion that he received the documents only after his parents requested them from the district attorney's office. The State argues that it was entitled to present evidence because it never conceded that the petitioner had not received the documents in question.

During the proceeding before the first coram nobis appeal, the State never asserted that the documents in question had actually been disclosed to the petitioner. Instead, the State argued for summary dismissal of the petition for writ of error coram nobis as time-barred and asserted that it was not required to disclose the documents because they were not exculpatory. *See Stamey III*, slip op. at 2. Following the summary dismissal of the petition, the petitioner appealed, and on appeal the State again advocated summary dismissal of the petition as time-barred and maintained that it was not required to disclose the documents prior to trial. *Id.* The State never challenged the petitioner's assertion that he first received the documents via an information request filed by his parents. The State's complete failure

to challenge the petitioner's contention led this court in the first coram nobis appeal to the legal, not factual, conclusion that the State had conceded the point and chosen to rely instead on an argument that disclosure was not necessary because the documents were not exculpatory. *See generally State v. White*, 635 S.W.2d 396, 400 (Tenn. Crim. App. 1982) (holding that a court may infer concession from the State's acquiescence).

Despite our conclusion, at issue in the previous appeal was propriety of the coram nobis court's summary dismissal of the petition for writ of error coram nobis. In light of the State's failure to challenge the petitioner's assertion that the documents had been withheld, we concluded that the lower court had erred by summarily dismissing the petition without addressing the issue of a due process tolling of the statute of limitations. *See Stamey III*, slip op. at 3-4. However, given the summary nature of the proceedings below, we charged the coram nobis court with determining the veracity of the petitioner's claims upon remand, ruling that the court "should determine whether the State withheld the statements at issue as the petitioner alleges and, if so, whether the bar of the statute of limitations would deprive the petitioner of the opportunity to present his claims at a meaningful time and in a meaningful manner." *Id.*, slip op. at 4. Because this court specifically ordered the coram nobis court to assess the validity of the petitioner's claim that the documents had been withheld by the State, that court did not err by permitting the State to offer evidence on the issue. *See Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976) ("'It is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process.'"); *see also State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995).

The petitioner also contends that the coram nobis court erred by finding the testimony of Mr. Williams and Mr. Hughes more credible than that of the petitioner when neither witness provided affirmative testimony that the petitioner saw the documents before he entered his plea. The State contends that the coram nobis court correctly accredited the testimony of Mr. Williams and Mr. Hughes.

Although we agree with the State that the assessment of witness credibility lies solely within the purview of, in this instance, the coram nobis court, we cannot agree that the coram nobis court could have relied solely on the credibility of Mr. Williams and Mr. Hughes to conclude that the petitioner had personally seen the documents at issue. Neither Mr. Williams nor Mr. Hughes offered affirmative testimony that each of the documents had been disclosed to the petitioner personally. Mr. Williams' testimony established that the State had disclosed the CAC reports to Mr. Hughes, and Mr. Hughes's testimony established that his file contained both CAC reports and the DCS field notes prior to the petitioner's entering his guilty plea. Additionally, Mr. Hughes testified that he recalled discussing the May 22, 2003 CAC report with the petitioner while the petitioner was free on bond. With regard to the

6

May 31, 2002 CAC report and the May 28, 2002 DCS field notes, however, the only affirmative testimony offered on the issue of personal disclosure to the petitioner was that of the petitioner, who steadfastly denied seeing any of the documents in question.

That being said, however, the proof offered by the State overwhelmingly established that the State had not, as the petitioner alleged, withheld the exculpatory documents. Indeed, the documents had been disclosed to Mr. Hughes prior to the petitioner's pleading guilty, as established by their presence in Mr. Hughes's file. The State fulfilled its requirement to disclose exculpatory evidence by providing the documents to the petitioner's counsel, an action which, for our purposes, operated as a disclosure to the petitioner himself. Because the petitioner failed to establish that the State withheld the documents as he alleged in his original petition for writ of error coram nobis, he has failed to establish that principles of due process require the tolling of the coram nobis statute of limitations in his case.

Moreover, the fact that the documents had indeed been disclosed to the defense prior to the petitioner's guilty plea establishes that the documents are not newly discovered evidence. *See, e.g.*, *Paul Welcome v. State*, No. E2006-02022-CCA-R3-PC, slip op. at 8 (Tenn. Crim. App., Knoxville, Nov. 28, 2007) (holding that third party confession did not constitute newly discovered evidence where defense counsel was aware of confession prior to trial); *see also State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007). The petitioner's claim that he never personally reviewed the documents, even if true, would not entitle him to coram nobis relief. Any relief would be available only via a claim that his counsel performed deficiently by failing to provide him with the documents prior to his pleading guilty, a claim that is not cognizable in a proceeding for a writ of error coram nobis.

Because the petitioner has failed to demonstrate that due process requires the tolling of the statute of limitations and because he cannot establish a viable claim for coram nobis relief, the coram nobis court did not err by denying his petition for writ of error coram nobis.

*II. Victim's Letter*

In his final claim, the petitioner asserts that the coram nobis court erred by concluding that the victim's letter recanting her earlier statement to the CAC that the petitioner had forced her to touch his penis did not constitute newly discovered evidence. He also claims that the coram nobis court should have allowed him to present live testimony from the victim at the evidentiary hearing. The State contends that the coram nobis court correctly concluded that the letter was not newly discovered evidence because it was consistent with the May 31, 2002 CAC interview.

7

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). Coram nobis relief is provided for in criminal cases by statute:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b) (2006); *see Vasques,* 221 S.W.3d at 525. In our view, the plain language of the coram nobis statute and its historical use belie its application to a guilty-pleaded conviction. The statute's repeated reference to matters litigated "at the trial" and its reference to "evidence" appear to limit its application to those cases that actually proceeded to trial. This conclusion is bolstered by our supreme court's command to test any "newly discovered evidence" proffered by the coram nobis petitioner "in the context of the trial, to assess its veracity and its impact upon the testimony of the other witnesses, and to determine the potential effect, if any, on the outcome." *Vasques*, 221 S.W.3d at 528. When there has been a guilty plea, there exists no evidence against which the petitioner's proffered evidence may be considered. The petitioner, by virtue of his guilty plea, has admitted both his guilt and the version of the facts as tendered by the State.

Citing *Newsome v. State*, 995 S.W.2d 129, 134 (Tenn. Crim. App. 1998), the petitioner challenges the State's perceived position that the writ of error coram nobis is not available to challenge a guilty-plea-based conviction, and he asserts that "a guilty plea may be set aside if it can be shown that the plea was not voluntarily or knowingly entered." Indeed, citing *Antonio Demonte Lyons*, No. 01C01-9508-CR-00263 (Tenn. Crim. App., Nashville, Aug. 15, 1997), *Newsome* did outline two situations permitting withdrawal of a guilty plea pursuant to Tennessee Rule of Criminal Procedure 32(f) and a third situation for attacking the guilty plea when "the judgment is final" and when "the plea was not entered voluntarily, intelligently, and knowingly, or was obtained through the abridgement of any right guaranteed by the United States or Tennessee Constitutions." *Newsome*, 995 S.W.2d at 133. As part of this analysis, the *Newsome* court said in a footnote that, "should 'newly discovered evidence' [a]ffect the voluntariness of a guilty plea, a *writ* [of error coram nobis]

8

may properly lie." *Id.* at 134 n. 6. *Newsome*'s truncated reference to the post-judgment, constitution-based means of attacking a guilty plea, however, did not acknowledge that the third rubric described a challenge mounted pursuant to the Post-Conviction Procedure Act rather than a challenge mounted via a petition for writ of error coram nobis. *See Antonio Demonte Lyons*, slip op. at 13 (stating that the third, constitutional basis for challenging a guilty plea must be presented procedurally through a petition for post-conviction relief); s*ee also* T.C.A. §§ 40-30-101 to 122. The implication is that the court in *Newsome*, acknowledging that a post-judgment challenge to the voluntariness or knowingness of a guilty plea could be mounted, suggested in dicta that a writ of error coram nobis "may properly lie" to present such a challenge. Thus, the claim that *Newsome* denotes a holding that the writ of error coram nobis will lie to challenge the voluntariness or knowingness of a guilty plea is unavailing, especially when the statute promulgating the use of the writ refers to the newly discovered *evidence* not being available "*on the trial of the case.*" T.C.A. § 40-26-105(b) (emphasis added).

We need not concern ourselves with whether *Newsome* binds us to permit the suing out of the writ in this case, however, because the record supports the ruling of the coram nobis court that the letter of recantation written by the victim does not qualify as newly discovered evidence. First, we agree with the trial court that the information in the letter had been previously provided to the petitioner via the May 31, 2002 CAC report and the May 28, 2002 DCS field notes wherein the victim denied any inappropriate contact with the petitioner and only provided incriminating statements in the presence of Deanna McCracken. Although the letter certainly provides more detail with regard to Ms. McCracken's alleged coercion of the witness, the gist of the information provided is the same.

> In addition, a new trial may be granted on the basis of a recantation only when:
>
> (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

*Id.* at 673 n.17. Here, because there was no trial, the victim has yet to offer any sworn testimony on the issue of the petitioner's guilt. Moreover, the petitioner has consistently maintained that the single incriminating statement given by the victim was false and still chose to plead guilty to the offense. In consequence, he cannot claim that he was "surprised

9

by the falsity, or was unable to know of the falsity" until after he pleaded guilty.

Finally, the victim's letter of recantation does not qualify as "newly discovered evidence" because it is inadmissible hearsay. The rule requiring a coram nobis petitioner to establish that newly discovered evidence may have resulted in a different outcome "presupposes that the evidence (a) would be admissible pursuant to the applicable rules of evidence, and (b) is material to the issues or grounds raised in the petition." *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). The petitioner offered only the letter as "newly discovered evidence," did not object when the coram nobis court indicated that it would not hear live testimony, and did not seek to make an offer of proof regarding the victim's testimony. *See State v. Galmore*, 994 S.W.2d 120, 125 (Tenn. 1999); *see also* Tenn. R. Evid. 103 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context."). As such, he has failed to demonstrate that the coram nobis court erred by denying his petition for writ of error coram nobis.

Accordingly, the judgment of the coram nobis court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE