# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs April 29, 2009

## STEPHEN WLODARZ v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hawkins County**
**No. 07CR0470     John F. Dugger, Jr., Judge**

---

**No. E2008-02179-CCA-R3-CO -Filed May 19, 2010**

---

After entering "best interest" guilty pleas in order to avoid a potential death penalty conviction, Petitioner, Stephen Wlodarz, filed a petition for a writ of error coram nobis. The Hawkins County Criminal Court denied the petition. On appeal, Petitioner asserts that the trial court erred in finding there was no newly discovered evidence and that Petitioner failed to demonstrate that his pleas were not knowingly and voluntarily entered. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

William Louis Ricker, Greeneville, Tennessee, for the appellant, Stephen Wlodarz.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and J. Douglas Godbee, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

Facing a capital murder prosecution for a July 2000 shoot-out with law enforcement officers, Petitioner entered "best interest" pleas under North Carolina v. Alford, 400 U.S. 25 (1970). On September 18, 2001, Petitioner pled guilty to charges of first degree premeditated murder, attempted first degree premeditated murder, two counts of aggravated assault, and one count of manufacturing a Schedule VI controlled substance. He was sentenced to a total effective sentence of life without parole. Less than a year later, he filed a petition for post-

conviction relief, which was denied. This court affirmed that decision. Steven Bernard Wlodarz v. State, No. E2002-02798-CCA-R3-PC, 2003 WL 22868267 (Tenn. Crim. App. at Knoxville, Dec. 3, 2003) ("Wlodarz I"). Our opinion summarized the events leading to Petitioner's prosecution:

> [T]he record reflects that on July 13, 2000, police officers were dispatched to the scene of a home burglary on Short Road near Rogersville, Tennessee. When they arrived, a witness gave a description of the suspect, which matched the petitioner. Officers went to the petitioner's home and confronted him, and the petitioner pulled out a shotgun and ordered the officers off his property. The officers left the scene; obtained arrest warrants against the petitioner for attempted aggravated burglary, vandalism, and two counts of aggravated assault; and returned to the petitioner's home. The petitioner barricaded himself inside, and a tactical unit was called. After several hours, the unit tried to force the petitioner out of his house by shooting tear gas canisters into it. During the melee, the victim was shot once in the head.

Id. at *1.

On December 17, 2007, Petitioner filed the present petition for a writ of error coram nobis, alleging that the State deceived him into believing it had sent ballistic evidence to the Federal Bureau of Investigation (FBI) for analysis. He claimed that the State did not actually send the evidence and that the State's deception caused him to enter a guilty plea. According to Petitioner, shortly after he filed his coram nobis petition, the FBI discovered documents showing that the State did indeed send the ballistic evidence and that the tests were conducted before his guilty plea in 2001. The tests concluded that the bullet fragments believed to have killed the victim could not be positively matched to the gun recovered from Petitioner's house. Therefore, at the coram nobis hearing, Petitioner's argument changed. He argued that the test results were dated prior to his guilty pleas, March 19, 2001, and June 28, 2001, respectively, and that he was deceived into pleading guilty by the State's withholding exculpatory evidence from him. Petitioner testified that he had not seen these documents prior to his pleas and that he only became aware of them in February 2008.

The reports were entered as exhibits during Petitioner's testimony at the coram nobis hearing. According to Petitioner's interpretation of the documents, the fragments that killed the victim did not match the bullet from the weapon Petitioner fired during the shoot-out. Specifically, the documents include the results of Inductively Coupled Plasma-Atomic Emission Spectroscopy tests conducted on various pieces of evidence recovered from the scene. Most of the pieces of evidence were lead bullet fragments. The record indicates that one test demonstrated that the lead bullet fragments recovered from the victim's body "differ

in composition" from the lead core of the bullet loaded into a gun recovered from Petitioner's house. The other test concluded that the fragments recovered from the victim were "analytically indistinguishable to the lead portion of the bullet loaded" in a weapon found in Petitioner's truck.

Petitioner was the only witness to attempt to interpret the documents. The State argued that the exhibit sticker on the March 19, 2001 report indicated the document was in the exhibit book that all parties possessed prior to Petitioner's pleas.

At the conclusion of the hearing, the coram nobis court denied the petition, finding that the evidence to which Petitioner pointed was not "subsequently or newly discovered" within the meaning of the coram nobis statute, Tenn. Code Ann. § 40-26-105(b), and that, regardless, it did not undermine the legitimacy of his Alford pleas. In its order, the coram nobis court first concluded that the petition was untimely under the statute of limitations. Nevertheless, it found that due process required that the statute of limitations be tolled so the court could decide the merits. Regardless, the court found that Petitioner had not demonstrated the existence of new evidence that may have led to a different result. Specifically, the coram nobis court noted that Petitioner's trial counsel filed a motion on July 24, 2001, seeking to have tests conducted on the bullet fragments found at the scene. The motion states:

> There have been no conclusive matches between bullet fragments found at the scene of this alleged offense and those found in the body of [the victim]. However, fragments have been found.

> As the court knows, several fragments have been sent to the FBI in order to attempt to find matches between the two groups.

> On July 18, 2001, the defense participated in a physical examination of most of the evidence in this case. Part of the evidence displayed included bullet fragments taken from the kitchen of [Petitioner's] home. These fragments have not been tested.

> Obviously, the state's theory is that the fatal shots to [the victim] were made by a weapon fired by [Petitioner]. Yet, given the fact that no conclusive comparisons have been made of bullet fragments, the defense submits that those fragments found at the scene should be compared to the fragments which entered [the victim's] body. This is, potentially, extremely exculpatory evidence. That is, the fragments found inside the home were not fired by [Petitioner]. [Petitioner's] concern is based upon several issues. Most

-3-

importantly, [Petitioner] would show the court that [t]he physical evidence in this case clearly demonstrates that a barrage of shots were fired in and around [Petitioner's] home during this episode. Most of the shots fired were by law enforcement officers.

Wherefore, [Petitioner] request[s] this Court to order that all fragments recovered in this case be tested against those found in the body of [the victim].

The coram nobis court noted that the trial court granted Petitioner's motion on July 27, 2001, and ordered the tests. The coram nobis court explained that the motion and order demonstrated that the bullet fragment issue "was clearly known by the defense," and, given Petitioner's high level of intelligence and understanding of the matter, he "would clearly understand . . . this particular motion." Thus, while the coram nobis court gave very little weight to the exhibit sticker affixed to one of the reports, it gave "great weight" to the motion. That motion, the coram nobis court noted, clearly demonstrated Petitioner knew that no bullet fragment had been conclusively matched to his weapon. Consequently, the coram nobis court found that the two reports were not newly discovered evidence within the meaning of the coram nobis statute.

In addition, the coram nobis court held that, even if the reports were new evidence, it was not persuaded that the report invalidated Petitioner's pleas. It reasoned that, because Petitioner entered best interest pleas, he did not necessarily agree with all the evidence, but he still accepted guilt in exchange for avoiding a potential death sentence. Given Petitioner's intelligence and awareness of the issues, the coram nobis court concluded, the additional evidence did not show that his pleas were not knowingly and voluntarily entered. This appeal followed.

## II. Analysis

The writ of error coram nobis is a post-conviction mechanism that has a long history in the common law and the State of Tennessee, see, e.g., State v. Vasques, 221 S.W.3d 514, 524-26 (Tenn. 2007), and is now codified in Tennessee Code Annotated section 40-26-105. The writ "is an *extraordinary* procedural remedy . . . [that] fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999). By its terms, the statute is "confined" to cases in which there are errors outside the record and to matters that were not previously litigated. Tenn. Code Ann. § 40-26-105(b). Where, as here, the case involves a matter that has been previously litigated, the writ will not lie unless the Petitioner demonstrates that he was without fault in failing to present the evidence and that the evidence "may have resulted in a different judgment." Id.

-4-

Our supreme court recently outlined the procedure that a trial court considering a petition for a writ of error coram nobis is to follow:

> [T]he trial judge must first consider the newly discovered evidence and be reasonably well satisfied with its veracity. If the defendant is without fault in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence may have led to a different result.

Vasques, 221 S.W.3d at 527 (quotation marks and emphasis omitted). In determining whether the new information may have led to a different result, the question before the court is "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceeding might have been different." Id. (quotation marks omitted). However, there are limits to the types of evidence that may warrant the issuance of a writ of error coram nobis. See, e.g., State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). Aside from the fact that the evidence must be both admissible and material to the issues raised in the petition,

> [a]s a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial will not justify the granting of a petition . . . when the evidence . . . would not have resulted in a different judgment.

Id. (citations omitted).

In the context of a guilty plea, "in order for a writ to issue, the appellant [has] to present newly discovered evidence which would show that his plea was not voluntarily or knowingly entered." Newsome v. State, 995 S.W.2d 129, 134. (Tenn. Crim. App. 1998). Thus, the coram nobis court must consider the impact of the newly discovered evidence on the validity of the petitioner's plea.

Generally, a decision whether to grant a writ rests within the sound discretion of the coram nobis court. See Hart, 911 S.W.2d at 375. We therefore review for abuse of discretion. See State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).

The record reflects that the coram nobis court did not abuse its discretion in denying the petition. Petitioner has failed to point to "new" evidence within the meaning of the

coram nobis statute. As noted above, the writ is available upon the showing of errors outside of the record or "matters that *were not or could not have been litigated* on the trial of the case." Tenn. Code Ann. § 40-26-105(b) (emphasis added); see also Workman, 111 S.W.3d at 19. The record is clear that test results were, or at least could have been, litigated at trial. The defense knew about the inconclusive test results prior to Petitioner's plea.

Moreover, the record reflects that the Petitioner raised similar complaints in his post-conviction petition. Trial counsel testified at the post-conviction hearing that he had the reports in his possession before Petitioner changed his pleas, although it was possible that one report was still outstanding. Trial counsel specifically testified that the reports he had prior to Petitioner's pleas indicated that "the fragments matched another gun found in the petitioner's house that was not fired by the petitioner." Wlodarz I, No. E2002-02798-CCA-R3-PC, 2003 WL 22868267, at *3. Trial counsel's testimony was corroborated by the exhibit sticker on the March 19, 2001, report. The testimony was also corroborated by the July 24, 2001, motion, which the coram nobis court gave "great weight." In that motion, the defense specifically addressed the inconclusive test results that the defense already had and specifically requested "that all fragments recovered in this case be tested against those found in the body of [the victim]." Such evidence, the motion noted, could be "extremely exculpatory evidence." Because the motion was granted, to the extent the defense did not already have these specific reports in hand, it knew that more testing would be forthcoming. Petitioner argues that the motion shows that trial counsel was "obviously" unaware of the two "new" reports. However, that conclusion is rebutted by trial counsel's post-conviction testimony that the reports he possessed at the time matched the fatal shot to a different gun.

In short, the motion demonstrates that the Petitioner was well-aware of the inconclusive test results prior to his pleas, and the defense was, as trial counsel testified at the post-conviction hearing, prepared to cross-examine the State's witnesses about this matter "extensively." Indeed, the defense was aware of the report suggesting that a different gun fired the fatal shot. These reports are therefore not "new" within the meaning of the coram nobis statute. See Jerry Britt v. State, No. E2004-01276-CCA-R3-PC, 2004 WL 2941154, at *4 (Tenn. Crim. App. at Knoxville, Dec. 20, 2004) (concluding that awareness of conflicting evidence at the time of plea means that later evidence confirming the conflict is not "new" for coram nobis purposes); see also Reginol L. Waters v. State, No. M2006-01687-CCA-R3-CO, 2008 WL 366148, at *5 (Tenn. Crim. App. at Nashville, Jan. 16, 2008) (concluding that the errors were not "new" because they were both known and subject to prior litigation).

Petitioner testified that he did not see the reports until February 2008, and the coram nobis court accepted that testimony as true. Regardless, that was the basis for Petitioner's earlier post-conviction petition. See Wlodarz I, No. E2002-02798-CCA-R3-PC, 2003 WL

22868267, at *4.  Petitioner was unable to meet the burden for his post-conviction petition, and we will not re-litigate that issue now.

### III.  Conclusion

Based upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE