IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 13, 2010

## RONNIE JACKSON, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 06-05479     W. Mark Ward, Judge**

───────────────

**No. W2009-02427-CCA-R3-CO  - Filed September 15, 2010**

───────────────

Following entry of "best interest" guilty pleas to one count of aggravated robbery and two counts of aggravated assault, the Petitioner, Ronnie Jackson, Jr., filed a petition for a writ of error coram nobis on the ground that newly discovered evidence proving his innocence affected the voluntariness of his guilty plea.  The Shelby County Criminal Court, following a hearing, denied relief.  On appeal, the Petitioner argues that the coram nobis court abused its discretion in finding that the newly discovered evidence was not credible, that he was not without fault in failing to present this evidence earlier, and that he failed to establish that he would not have entered his guilty pleas had he been aware of this evidence.  Upon review, we affirm the judgment of the coram nobis court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the Defendant-Appellant, Ronnie Jackson, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and P. Thomas Hoover, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On May 3, 2007, the Petitioner entered "best interest" guilty pleas, pursuant to Alford v. North Carolina, 400 U.S. 25, 91 S. Ct. 160 (1970), to one count of aggravated robbery and two counts of aggravated assault in exchange for an effective eight-year sentence.  At the guilty plea hearing, the State reiterated the facts underlying the Petitioner's guilty pleas:

If this matter [had gone] to trial, the State would have shown that between February 26th [sic] of '06 and March 1st [sic] of 2006, the [Petitioner] went with his co-defendants in McDonald's on Hacks Cross in Shelby County armed with guns and robbed the store at gunpoint, taking money from the manager and during the course of this robbery, aimed a gun at two other employees putting them in fear of their life.

On August 20, 2007, a little more than three months after entry of his guilty pleas, the Petitioner filed a petition for habeas corpus relief, which was treated as a petition for post-conviction relief, in which he alleged in part that his guilty pleas were involuntary and unknowing because trial counsel rendered ineffective assistance in failing to properly investigate his case. See Ronnie Jackson, Jr. v. State, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *1 (Tenn. Crim. App., at Jackson, Oct. 26, 2009), perm. to appeal denied (Tenn. Apr. 16, 2010). During the post-conviction hearing, trial counsel testified that he filed a motion to suppress the victim's identification on the ground that it must have been coerced since the perpetrators were wearing masks during the robbery. Id. at *4. Trial counsel also testified that he informed the Petitioner that it was in his best interest to accept the offer from the State of an effective eight-year sentence as a Range I, standard offender, given the overwhelming evidence against him, which included the victim's identification of him and the likelihood that his three codefendants would testify against him at trial. Id. In addition, counsel noted that the Petitioner faced a maximum sentence of approximately fifty years as a Range II, multiple offender if he proceeded to trial. Id. The Petitioner testified at the post-conviction hearing that he believed the "photo[]spread used to identify him was 'highly suggestive' due to the arrangement of the photos and the fact that [everything but] his eyes were covered." Id. at *5. During cross-examination, the Petitioner admitted that it was in his best interest to plead guilty because he faced a sentence of up to fifty years if he proceeded to trial. Id. The post-conviction court denied relief, finding that the Petitioner failed to satisfy his burden of proving that trial counsel was ineffective or that his plea was involuntary. Id. On appeal, this court affirmed the post-conviction court's denial of relief. Id. at *9. It specifically concluded that the Petitioner failed to show that trial counsel failed to adequately investigate his case. Id.

On February 16, 2009, nearly two years after entry of his guilty plea, the Petitioner filed a pro se writ of error coram nobis generally alleging that newly discovered exculpatory evidence affected the voluntariness of his guilty plea. The State filed a response arguing that the petition was untimely and the Petitioner failed to provide an explanation as to why he had not discovered this evidence sooner. Private counsel was appointed, and the Petitioner filed an amended petition for a writ of error coram nobis alleging that due process required a tolling of the statute of limitations because he first became aware of Brandon Rodgers's false identification of him approximately two years after entry of his guilty plea, which made his

guilty plea unknowing and involuntary. Attached to the amended petition was an affidavit signed by Rodgers stating the following:

> [Neither] [t]he defendant, Ronnie Jackson[,] Jr., nor his counsel at the beginning of case #06-05479 were aware that detective(s) within the said case . . . coerced me to make a false identification of Ronnie Jackson. After I made a failed third attempt to identify the Robbery suspect of this case by a photo spread, I randomly selected other pictures [and the] detective . . . told me I was "wrong" until I pointed at Ronnie Jackson's picture and was told he was the one that robbed me at work (McDonalds).

The State filed a response to the amended petition claiming that the Petitioner did not allege anything in his amended petition for a writ of error coram nobis that would have infringed his due process rights and that the Petitioner could have discovered this evidence with due diligence since "[t]he recanting witness's affidavit mentions nothing that indicated his testimony would have been anything different than what the petitioner alleges in his petition and accompanying affidavit."

At the November 12-13, 2009 hearing on the petition for a writ of error coram nobis, the Petitioner presented testimony from the victim, Brandon Rodgers and entered the photo spread signed by Rodgers into evidence. The State did not present any witness testimony but entered into evidence the statement that Rodgers gave to police and the statement that Alonzo Jones, a friend of the Petitioner's, gave to police.

Brandon Rodgers testified that he was working at McDonald's the day that the offenses in this case took place. He said that approximately two or three days after the incident, a detective came to his work and asked him if he could identify the individuals responsible for the incident in a photo spread. Rodgers said that the detective covered the pictures of the individuals in the photo spread so that only their eyes were showing, since the perpetrators were wearing masks during the incident with only their eyes visible. After the photo spread was entered into evidence, Rodgers said that he could not remember which picture he first chose, but he "just made a selection." Then the detective asked him if he was sure that this was the person involved in the incident, and Rodgers said, "I'm not positive." The detective then asked him if he wanted to make another selection. Rodgers pointed to another photograph, and the detective asked him if he was sure. He said, "[Y]es[,] I believe that's him." Rodgers said that the detective again asked him if he was sure about his selection. Rodgers said, "[Y]eah[,] and [the detective] said, well that's the right person." When asked if the detective told him the picture that he wanted him to choose, Rodgers replied, "He didn't exactly point it out, but he let me make another selection[.]" He said that at the time that the detective showed him the photo spread, he "was nervous" and "felt

pressured to pick the right picture." Rodgers said that he believed he correctly identified the Petitioner as one of the individuals involved in the incident. He also said that he told the detective the truth that day about what happened. Rodgers said that he was contacted by the Petitioner's sister, with whom he had attended middle school, to see if he had any information about the incident. Rodgers told the Petitioner's sister what happened when the detective presented him with the photo spread. He said he later signed an affidavit written by the Petitioner regarding the identification process. Rodgers said that he talked to the Petitioner about the photo spread procedure a few days after his conversation with the Petitioner's sister. Rodgers said that he believed that a year or two passed between the Petitioner's entry of his guilty pleas and his initial contact with the Petitioner's sister. He acknowledged that he gave a statement to the detective in which he said that he was sure the second picture he identified was the individual involved in the incident. He also admitted that he told the detective that the Petitioner was the individual who was carrying the gun during the robbery. Rodgers said that he would have testified in accordance with his statement at trial had he been given the chance.

The Petitioner also testified at the coram nobis hearing. He stated although he maintained his innocence throughout the case, he pleaded guilty to the offenses because he thought that it was in his best interest to do so. The Petitioner said that after he pleaded guilty, he filed a petition for habeas corpus relief, which was treated as a petition for post-conviction relief, wherein he alleged ineffective assistance of counsel. He said that the post-conviction court denied relief, and on February 16, 2009, he filed his petition for a writ of error coram nobis. The Petitioner asserted that the victims at McDonald's were "coerced to pick an identification." Although he received his discovery packet prior to entering his guilty pleas, the Petitioner claimed that "everything wasn't in there, [and] as far as [the photo spread] identification, it was blacked out, I couldn't see it." The Petitioner said that he pleaded guilty because he did not have any evidence to prove that the offenses with which he was charged were "fraudulent." He said that at the time he pleaded guilty he did not "have every other part [of the evidence against him], like every statement from every victim that I have now, such as Ms. Moore's statement, stating that the eyes [of the perpetrators] resembled two other employees that had worked [at McDonald's]. He claimed "he was given these statements after [he] pled guilty[,]" and they were not included in his discovery packet.

The Petitioner said that he asked Rodgers what happened during the identification process. He said that he did not pay Rodgers or threaten him in exchange for the information. He claimed that if he had known the circumstances surrounding Rodgers's identification of him he would not have pleaded guilty. The Petitioner said that after his discussion with Rodgers about the identification process, he asked him to sign an affidavit that he drafted. He acknowledged that other employees identified him from the photo spreads. However, when he learned that Rodgers's identification was coerced, he also felt

-4-

that the other identifications made by other employees were also coerced. The Petitioner disputed whether his friend, Alonzo Jones, told a detective that the Petitioner had confessed to the crime. However, he admitted that either one or both of his codefendants would most likely have testified against him had he proceeded to trial. The Petitioner said that the time between his guilty pleas and asking his sister to contact Rodgers was "a year, or two." He acknowledged that he knew Rodgers was a witness prior to trial but was unsure whether his attorney actually contacted Rodgers. He said that his attorney did not "try to go get any evidence to challenge [the victim's] statements[.]" Instead, he claimed trial counsel was primarily concerned with getting him to accept the plea offered by the State. He said that he asked his sister to talk to Rodgers when he finally received the full statements from the victims, which was approximately a year after he entered his guilty pleas. The Petitioner said that it took him approximately another year to research his case, and then he asked his sister to contact the victim about what actually happened. He admitted he was aware prior to trial that the victim's identification could have been challenged since the individuals who robbed the McDonald's were wearing masks. He also acknowledged that he had previously filed a post-conviction petition alleging that trial counsel had not properly investigated his case. Finally, the petitioner admitted that his post-conviction claim was identical to his current coram nobis claim.

On November 13, 2009, the Shelby County Criminal Court entered a written order dismissing the Petitioner's petition for a writ of error coram nobis on the following grounds: (1) the testimony of Brandon Rodgers was not credible regarding the detective's alleged coercion during the identification procedure, (2) the Petitioner failed to show that he was without fault in failing to present this evidence before trial, at trial, or during the post-conviction proceedings, and (3) the Petitioner failed to show that had he been aware of Rodgers's information regarding the suggestive identification procedure, he would not have pleaded guilty. The Petitioner then filed a timely notice of appeal.

The Petitioner now appeals the dismissal of his petition for a writ of error coram nobis and again argues that newly discovered evidence proving his innocence affected the voluntariness of his guilty plea. He also contends that due process concerns tolled the statute of limitations in this case. In response, the State contends that the coram nobis court properly dismissed the petition. Specifically, the State argues that the petition was time-barred, that the Petitioner should have presented the evidence at an earlier proceeding, that the Petitioner failed to demonstrate the veracity of the newly discovered evidence, and that the Petitioner failed to establish that he would not have entered his guilty plea had he known of the newly discovered evidence. We agree with the State.

A writ of error coram nobis is available to convicted defendants. T.C.A. § 40-26-105(a) (2006). However, a writ of error coram nobis is an "extraordinary procedural

remedy[,]" which "fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (citing Penn v. State, 670 S.W.2d 426, 428 (Ark. 1984)); State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002), perm. to appeal denied (Tenn. May 19, 2003). "The purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting State ex rel. Carlson v. State, 407 S.W.2d 16, 167 (Tenn. 1966)), perm. to appeal denied (Tenn. Oct. 30, 1995).

Tennessee Code Annotated section 40-26-105 provides guidance regarding writs of error coram nobis:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105 (b) (2006). In addition to the requirements in this rule, the "subsequently or newly discovered evidence" must also be admissible and material to the issues alleged in the petition. Hart, 911 S.W.2d at 375.

In the context of a guilty plea, the petitioner requesting a writ to issue must "present newly discovered evidence [showing] that his plea was not voluntarily or knowingly entered." Newsome v. State, 995 S.W.2d 129, 134 (Tenn. Crim. App. 2002), perm. to appeal denied (Tenn. Apr. 19, 1999). In other words, "the corum nobis court must consider the impact of the newly discovered evidence on the validity of the petitioner's plea." Stephen Wladarz v. State, No. E2008-02179-CCA-R3-CO, 2010 WL 1998766, at *4 (Tenn. Crim. App., at Knoxville, May 19, 2010).

The Tennessee Supreme Court outlined the process that the trial court should follow when considering a petition for a writ of error coram nobis:

> [W]e hold that in a coram nobis proceeding, the trial judge must first consider the newly discovered evidence and be reasonably well satisfied with its veracity. If the defendant is without fault in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and

that offered at the coram nobis proceeding in order to determine whether the new evidence may have led to a different result.

State v. Vasques, 221 S.W.3d 514, 527 (Tenn. 2007) (quotations omitted).

"The decision to grant or deny a petition for the writ of error coram nobis on the ground of subsequently or newly discovered evidence rests within the sound discretion of the trial court."  Hart, 911 S.W.2d at 375 (citations omitted).  If the court determines that the petitioner is entitled to relief, the judgment shall be set aside and the petitioner shall be granted a new trial. T.C.A. § 40-26-105(c) (2006).  In order to receive a new trial because of newly or subsequently discovered evidence, the Petitioner must establish:

(1) the grounds and the nature of the newly discovered evidence;

(2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial;

(3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and

(4) the relief sought by the petitioner.

Newsome, 995 S.W.2d at 133 (citing Hart, 911 S.W.2d at 374-75) (internal footnote omitted).  Affidavits supporting a petition for a writ of error coram nobis should be filed with the petition itself or at some time prior to the hearing. Hart, 911 S.W.2d at 375 (citing Ross v. State, 170 S.W. 1026, 1027-28 (1914); State v. Todd, 631 S.W.2d 464, 466-67 (Tenn.Crim.App. 1981), perm. to appeal denied (Tenn. 1982)).

Unlike motions to reopen a post-conviction petition, petitions for a writ of error coram nobis typically require a hearing because they are fact-specific:

The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition.  Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time.  Coram nobis claims therefore are singularly fact-intensive.  Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing.

Harris v. State, 102 S.W.3d 587, 592-93 (Tenn. 2003) ("Harris I").

The statute of limitations for a petition for a writ of error coram nobis is one year from the date the judgment becomes final in the trial court. T.C.A. § 27-7-103; Mixon, 983 S.W.2d at 671. For the purposes of a coram nobis petition, a judgment becomes final thirty days after the entry of the trial court's judgment if no post-trial motions are filed or upon entry of an order disposing of a timely post-trial motion. Mixon, 983 S.W.2d at 670. The State has the burden of raising the statute of limitations bar as an affirmative defense. State v. Harris, 301 S.W.3d 141, 144 (Tenn. 2010) ("Harris II") (citing Harris, 102 S.W.3d at 593 ("Harris I")). The issue of whether a claim is barred by an applicable statute of limitations is a question of law, which this court reviews de novo. Id. at 144 (citing Brown v. Erachem Comilog, Inc., 231 S.W.3d 918, 921 (Tenn. 2007)).

Here, the petitioner entered his guilty pleas on May 3, 2007, and then filed his petition for a writ of error coram nobis nearly two years later on February 16, 2009. The Petitioner argued in his coram nobis petition and on appeal that the statute of limitations should be tolled for due process concerns, since he first became aware of Rodgers's information regarding the coercive identification process sometime after the statute of limitations lapsed. See Workman, 41 S.W.3d at 103 (holding that due process concerns may require that the statute of limitations for filing a petition for a writ of error coram nobis be tolled). In Harris II, the Tennessee Supreme Court determined that due process considerations may toll the one-year statute of limitations for a writ of error coram nobis:

> When a petitioner seeks a writ of error coram nobis based on newly discovered evidence of actual innocence, due process considerations may require tolling of the statute of limitations. Workman v. State, 41 S.W.3d 100, 101 (Tenn. 2001). These due process considerations refer to the principle that "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992). Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. See Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006).

Harris, 301 S.W.3d at 145 ("Harris II")). In order to determine whether due process concerns require a tolling of the statute of limitations, "a court must weigh the petitioner's interest in obtaining a hearing to present a later-arising ground for relief against the State's interest in

preventing stale and groundless claims. Id. (citing Workman, 41 S.W.3d at 103). In weighing these interests, courts should use the following test:

> (1) determine when the limitations period would normally have begun to run;
>
> (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and
>
> (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Id. (citing Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)).

In applying this test, we must first determine when the limitations period would normally have begun to run. Here, the statute of limitations period would have begun to run on June 2, 2007, thirty days after the Petitioner entered his guilty plea, since it appears that no post-trial motions were filed in this case. Therefore, the statute of limitations would have expired one year later on June 2, 2008. Here, the Petitioner did not file his petition for a writ of error coram nobis until February 16, 2009, approximately eight months after the statute of limitations lapsed. Second, we must determine whether the grounds for relief arose after the statute of limitations would normally have commenced. At the coram nobis hearing, the Petitioner testified that he did not begin investigating the identification process until after he received the statements of several victims, which was approximately a year after he entered his guilty pleas. He then stated that it took him approximately another year to research his case before asking his sister to contact Rodgers. Despite the Petitioner's favorable, though vague, testimony regarding the time line of critical events, we do not conclude that his grounds for relief arose after the one year statute of limitations commenced. First, the Petitioner acknowledged during the coram nobis hearing that he knew the name of the victim who identified him and failed to contact him prior to trial. Moreover, this court's opinion from the Petitioner's post-conviction case makes it clear that the Petitioner believed that the identification process was coercive prior to trial and ordered trial counsel to file a motion to suppress on that basis. Id. at *4. Therefore, the Petitioner's grounds for relief did not arise after the one year statute of limitations commenced. In light of this determination, we do not need to consider whether a strict application of the statute of limitations would deny the Petitioner a reasonable opportunity to present his claim.

In considering whether the statute of limitations is tolled for due process concerns, we note that an evidentiary hearing on the petition for a writ of error coram nobis was conducted in this case. However, in the order denying relief, the coram nobis court declined to address

whether the statute of limitations was tolled in this case. Based on the record and the transcript from the coram nobis hearing, we decline to toll the statute of limitations in this case. However, in the event of further review, we will address the Petitioner's claim on its merits. See Arthur L. Armstrong v. State, No. M2008-02328-CCA-R3-CO, 2010 WL 2977890, at *12 (Tenn. Crim. App., at Nashville, July 30, 2010) (This court refrained from tolling the statute of limitations but felt that the interests of justice and the possibility of further review required an examination of the petitioner's claim on its merits since an evidentiary hearing had been conducted).

The record in this case shows that the coram nobis court did not abuse its discretion in denying the petition. Following a hearing, the court found that the testimony of Rodgers was not credible. It also found that the Petitioner failed to show that he was without fault in failing to present this evidence before or during trial or during the post-conviction proceedings and failed to show that he would not have pleaded guilty had he been aware of Rodgers's information regarding the coercive identification procedure. See Vasques, 221 S.W.3d at 527. We agree with the findings of the coram nobis court. Rodgers's account of the detective's photo spread procedure was confusing and inconsistent. Although Rodgers signed an affidavit indicating the coercive nature of the identification procedure, Rodgers's testimony at the coram nobis hearing did not establish that the procedure was in any way coercive. In addition, Rodgers testified that he chose a total of two pictures in the photo spread, while his affidavit states that he made three failed attempts before choosing the Petitioner's photograph. He further testified that he believed he correctly identified the Petitioner as one of the individuals involved in the robbery, thereby undercutting the Petitioner's claim that his pleas were involuntary because he did not have this "exculpatory" evidence at the time that he entered his pleas. Moreover, although the Petitioner claimed that he failed to present this evidence earlier because he did not receive the victim's statements until after he entered his guilty pleas, he acknowledged during the coram nobis hearing that he was aware prior to trial that Rodgers was the victim who identified him and that the photo spread identification could have been challenged because the perpetrators were wearing masks.

Finally, as noted by the coram nobis court, the Petitioner's claims in his coram nobis petition were almost identical to the claims in his post-conviction petition, wherein he alleged ineffective assistance of counsel based on trial counsel's failure to properly investigate his case. During the coram nobis hearing, the Petitioner admitted that his post-conviction claim was the same as his coram nobis claim. Following the hearing, the coram nobis court determined that the Petitioner "fully litigated the issue of ineffective assistance of counsel due to an inadequate investigation in his post-conviction proceeding" and that his petition for a writ of error coram nobis was "nothing more than an attempt to litigate this issue again." See Harris, 301 S.W.3d at 148 ("Harris II") (quoting People v. Hyung Joon Kim, 202 P.3d 436, 447 (Cal. 2009) (holding that the writ of coram nobis is "not a 'catch-all' remedy that enables

-10-

convicted persons to 'litigate and relitigate the propriety of their convictions <u>ad infinitum</u>'"). We agree.  Accordingly, we conclude that the coram nobis court did not abuse its discretion in denying relief.

## CONCLUSION

We conclude that the Petitioner is not entitled to relief pursuant to a writ of error coram nobis.  The Shelby County Criminal Court's judgment is affirmed.

_____

CAMILLE R. McMULLEN, JUDGE